[Cite as *State v. Sellman*, 2019-Ohio-4185.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MIAMI COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2019-CA-3 |
| | : | |
| v. | : | Trial Court Case No. 2018-CR-12 |
| | : | |
| LUKE A. SELLMAN | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 11th day of October, 2019.

. . . . . . . . . . .

JANNA L. PARKER, Atty. Reg. No. 0075261, Assistant Prosecuting Attorney, Miami County Prosecutor's Office, 201 West Main Street, Troy, Ohio 45373
        Attorney for Plaintiff-Appellee

JAMES A. ANZELMO, Atty. Reg. No. 0068229, 446 Howland Drive, Gahanna, Ohio 43230
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

WELBAUM, P.J.

{¶ 1} Following his conviction on his guilty plea for aggravated possession of drugs, Defendant-appellant, Luke A. Sellman, challenges on appeal the decision of the Miami County Court of Common Pleas overruling his presentence motion to withdraw his guilty plea. For the reasons outlined below, the judgment of the trial court will be affirmed.

**Facts and Course of Proceedings**

{¶ 2} On February 14, 2018, the Miami County Grand Jury returned an indictment charging Sellman with one count of aggravated possession of drugs (methamphetamine) in violation of R.C. 2925.11(A)/(C)(1)(d), a felony of the first degree, and one count of possession of drugs (marijuana) in violation of R.C. 2925.11(A)/(C)(3)(c), a felony of the fifth degree. The count of aggravated possession of drugs included a forfeiture specification for $2,975 that was found during the commission of the offense. The charges arose after detectives from the Miami County Sheriff's Office executed a search warrant at Sellman's residence and discovered the drugs in question. The detectives also discovered various items of drug paraphernalia, including scales, baggies, and smoking pipes, as well as numerous firearms and the $2,975 referenced above.

{¶ 3} Following his indictment, Sellman entered into a plea agreement with the State. As part of this plea agreement, Sellman agreed to plead guilty to the aggravated possession of drugs charge and the attendant forfeiture specification. In exchange for Sellman's guilty plea, the State agreed to dismiss the charge for possession of marijuana. The State also agreed not to file any drug trafficking charges against Sellman or any charges against Sellman's girlfriend, Jessica Burd. The matter then proceeded to a plea

hearing on June 11, 2018.

{¶ 4} At Sellman's plea hearing, the trial court confirmed that Sellman was entering his guilty plea voluntarily and that Sellman understood the nature of the charges against him. The trial court also confirmed that Sellman understood the maximum penalty involved and that he was not eligible for probation or community control sanctions. In doing so, the trial court expressly advised Sellman that his offense carried a mandatory prison sentence ranging from three and 11 years. Following these advisements, Sellman stated: "I was under the impression that—" and then paused to speak with his trial counsel off the record. Plea Hearing Trans. p. 6.

{¶ 5} After speaking with his trial counsel off the record, Sellman informed the trial court that he understood its prior statements regarding the mandatory prison sentence that he faced. In response, the trial court asked Sellman: "Did your attorney answer your question to your satisfaction?" *Id.* Sellman responded "Yes." *Id.* The trial court then advised Sellman that he was "not eligible for any early release program, such as judicial release or transitional control, or any other form of early release[.]" *Id.* at 7. Upon being so advised, Sellman indicated to the trial court that he understood he was ineligible for early release.

{¶ 6} As the plea hearing continued, the trial court asked Sellman if he had signed, read, and discussed the written plea form with his trial counsel. Sellman indicated that he had done so and told the trial court that he had no questions about the contents of the plea form. The contents of the plea form included the same information that the trial court had given Sellman about the mandatory nature of his prison sentence, the sentencing range, and his ineligibility for judicial release.

{¶ 7} At the close of the plea hearing, the trial court asked Sellman if he felt that he had enough time to think about his decision to plead guilty. Sellman responded that he did. Sellman thereafter pled guilty to aggravated possession of drugs and the attendant forfeiture specification. Satisfied that his plea was knowingly, intelligently, and voluntarily entered, the trial court accepted Sellman's guilty plea. The trial court then ordered a presentence investigation and scheduled the matter for sentencing on July 17, 2018.

{¶ 8} Following the plea hearing, Sellman retained new trial counsel. Then, on the day before his sentencing hearing, Sellman filed a motion to withdraw his guilty plea. In the motion, Sellman requested to withdraw his guilty plea on grounds that he did not have sufficient communications with his former trial counsel prior to the plea hearing. Sellman also claimed that he did not understand the nature of the possible penalties he faced before entering his guilty plea. Sellman further claimed that there was a "possible" motion to suppress that could have been filed and a "possible" defense of entrapment that were not addressed by his former trial counsel.

{¶ 9} On July 27, 2018, the trial court held an evidentiary hearing on Sellman's presentence motion to withdraw his guilty plea. Sellman testified on his own behalf at the evidentiary hearing, and his former trial counsel, Jay Lopez, testified on behalf of the State. Following their testimony, the trial court took the matter under advisement and issued a written decision overruling Sellman's motion to withdraw his guilty plea. Sellman now appeals from that decision, raising two assignments of error for review.

**First Assignment of Error**

{¶ 10} Under his first assignment of error, Sellman contends that the trial court erred in denying his presentence motion to withdraw his guilty plea. We disagree.

{¶ 11} Pursuant to Crim.R. 32.1, "[a] motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." The presentence standard is more lenient than the "manifest injustice" standard, which is applicable to postsentence motions. *State v. Fugate*, 2d Dist. Montgomery No. 21574, 2007-Ohio-26, ¶ 10. A presentence motion to withdraw a guilty plea "should be freely and liberally granted." *State v. Xie*, 62 Ohio St.3d 521, 527, 584 N.E.2d 715 (1992). "Nevertheless, even under the presentence standard, the right to withdraw a plea is not absolute, and a trial court retains discretion to overrule a presentence motion to withdraw a plea." *State v. Rozell*, 2018-Ohio-1722, 111 N.E.3d 861, ¶ 24 (2d Dist.), citing *Xie* at 527.

{¶ 12} This court reviews a trial court's decision on a motion to withdraw a guilty plea for an abuse of discretion. *Id.* at ¶ 25, citing *State v. Smith*, 49 Ohio St.2d 261, 264, 361 N.E.2d 1324 (1977), paragraph two of the syllabus. " 'Abuse of discretion' has been defined as an attitude that is unreasonable, arbitrary or unconscionable." (Citation omitted.) *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). "It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary." *Id.* "A decision is unreasonable if there is no sound reasoning process that would support that decision." *Id.*

{¶ 13} In evaluating whether a trial court has abused its discretion in overruling a

presentence motion to withdraw a plea, this court considers the following nine factors set forth in *State v. Fish*, 104 Ohio App.3d 236, 240, 661 N.E.2d 788 (1st Dist.1995), *overruled on other grounds*, *State v. Sims*, 2017-Ohio-8379, 99 N.E.3d 1056 (1st Dist.):

> "(1) whether the accused is represented by highly competent counsel, (2) whether the accused was given a full Crim.R. 11 hearing before entering the plea, (3) whether a full hearing was held on the motion, (4) whether the trial court gave full and fair consideration to the motion, (5) whether the motion was made within a reasonable time, (6) whether the motion sets out specific reasons for the withdrawal, (7) whether the accused understood the nature of the charges and possible penalties, (8) whether the accused was perhaps not guilty of or had a complete defense to the charge or charges, and (9) whether the state is prejudiced by withdrawal of the plea."

*State v. Warrix*, 2d Dist. Montgomery No. 26556, 2015-Ohio-5390, ¶ 29, quoting *State v. Massey*, 2d Dist. Champaign No. 2015-CA-1, 2015-Ohio-4711, ¶ 11. (Other citation omitted.) *Accord Rozell* at ¶ 26.

{¶ 14} " 'Consideration of the factors is a balancing test, and no one factor is conclusive.' " *State v. Preston*, 2d Dist. Montgomery No. 25393, 2013-Ohio-4404, ¶ 20, quoting *State v. Zimmerman*, 10th Dist. Franklin No. 09AP-866, 2010-Ohio-4087, ¶ 13, citing *Fish* at 240. However, the ultimate question is "whether there is a 'reasonable and legitimate basis for the withdrawal of the plea.' " *Warrix* at ¶ 30, quoting *Xie*, 62 Ohio St.3d at 527, 584 N.E.2d 715. "A change of heart or mistaken belief about [a] plea is not a reasonable basis requiring a trial court to permit the defendant to withdraw his plea." *State v. Deloach*, 2d Dist. Montgomery No. 21422, 2006-Ohio-6303, ¶ 15, citing *State v.*

*Lambros*, 44 Ohio App.3d 102, 103, 541 N.E.2d 632 (8th Dist.1988).

{¶ 15} With regard to the first factor in *Fish*, the record indicates that Sellman was represented by highly competent counsel. Sellman's former trial counsel, Jay Lopez, testified to having 11 years of experience as a licensed attorney during which he has solely practiced criminal law. After ensuring that Sellman had waived his attorney-client privilege, Lopez testified that he had met with Sellman at least six times and that their meetings had lasted anywhere from ten minutes to one hour. During these meetings, Lopez testified that he and Sellman had discussed the facts of the case, reviewed the discovery packet, and gone over possible defenses and their likely outcomes. Lopez further testified to contacting the prosecutor numerous times in an effort to negotiate a favorable plea offer for Sellman. When considering these facts, the competency of counsel factor did not weigh in favor of withdrawing Sellman's guilty plea.

{¶ 16} The second factor in *Fish*—whether the accused was given a full Crim.R. 11 hearing before entering his plea—also does not weigh in favor of withdrawing Sellman's guilty plea. A review of the plea hearing transcript establishes that Sellman did receive a full Crim.R. 11 hearing. Although Sellman argues otherwise on appeal, we note that during the evidentiary hearing on his presentence motion to withdraw his guilty plea, Sellman conceded that the requirements of Crim.R. 11 were satisfied and asked the trial court to focus on the other relevant factors in determining whether to grant his motion. *See* Hearing on Motion to Withdraw Plea Trans. p. 81. Regardless of this concession, Sellman's claim that he did not receive a meaningful Crim.R. 11 hearing is belied by the record of the plea hearing and thus lacks merit.

{¶ 17} In addition to the first and second factors, the third factor in *Fish* also does

not weigh in favor of granting Sellman's motion to withdraw his guilty plea. As previously noted, this factor requires us to consider whether a full evidentiary hearing was held on the plea withdrawal motion. The record indicates that the evidentiary hearing in this case lasted almost two hours and that both witnesses were thoroughly questioned and cross-examined during the hearing. Therefore, we find that a full evidentiary hearing was held on Sellman's motion.

{¶ 18} The record also indicates that the trial court fully and fairly considered Sellman's motion, which is the fourth factor that must be considered. In its written decision overruling Sellman's motion, the trial court addressed each of the claims that Sellman raised in support of withdrawing his guilty plea and explained its rational as to why those claims did not justify granting his motion. Therefore, the fourth factor in *Fish* also did not weigh in favor of withdrawing Sellman's guilty plea.

{¶ 19} We now turn to the sixth factor, which requires this court to consider whether Sellman's motion set out specific reasons for wanting to withdraw his guilty plea. Upon review, we find that Sellman's motion did set out specific reasons. As previously noted, Sellman alleged in his motion that he wanted to withdraw his guilty plea because he did not have sufficient communications with his former attorney, Jay Lopez, prior to the plea hearing. Sellman also alleged that he did not understand the nature of the possible penalties he faced before entering his guilty plea.

{¶ 20} In support of these claims, Sellman testified that he was led to believe that the mandatory minimum prison sentence he could receive was two years, and that attorney Lopez did not advise him that the mandatory minimum was actually three years until just moments prior to the plea hearing. Sellman also testified that he had mistakenly

thought he was eligible for judicial release and did not understand that he was ineligible until the very last minute at the plea hearing. Sellman further testified that he did not have a good understanding of what was going on when he entered his guilty plea, and that after learning of this last minute information, he did not want to go forward with pleading guilty. Sellman, however, testified that he pled guilty anyway because he felt that he was "locked into" the plea. Hearing on Motion to Withdraw Plea Trans. p. 6.

{¶ 21} Although Sellman provided specific reasons for wanting to withdraw his guilty plea, the trial court found that his testimony in support of those reasons lacked credibility. We note that " '[d]ecisions regarding the credibility of witnesses are primarily for the trial court to make, given that the trial judge, as the finder of fact at the hearing on the motion to withdraw the plea, saw and heard the witnesses' testimony.' " *Rozell*, 2018-Ohio-1722, 111 N.E.3d 861, at ¶ 28, quoting *State v. Hess*, 2d Dist. Montgomery No. 24453, 2012-Ohio-961, ¶ 22. (Other citations omitted.)

{¶ 22} The trial court found that Sellman's testimony lacked credibility for multiple reasons. For example, the trial court found that Sellman's testimony was contradictory in that Sellman initially testified that he did not learn of the correct mandatory minimum sentence "up until two weeks prior to sentencing" and then moments later testified that he learned of it "moments prior" to his plea. *Id.* at 5-6. The trial court also found that Sellman's testimony claiming that he did not have a good understanding of what was going on when he entered his guilty plea lacked credibility given that Sellman had been a frequent criminal defendant in the court system with multiple convictions.

{¶ 23} The trial court additionally found that Sellman's testimony lacked credibility because he essentially testified to providing false information under oath at the plea

hearing. During the plea hearing, Sellman advised the trial court that he had enough time to speak with his attorney about pleading guilty, was satisfied with his attorney's advice, and felt his attorney did a competent job of representing him. Sellman also advised the trial court that he understood his prison sentence would be mandatory, that he was subject to a minimum sentence of three years in prison, and that he was ineligible for judicial release. Sellman further advised the trial court that he understood the contents of the written plea form and that he had enough time to make his decision to plead guilty. Then, when Sellman testified a month later at the evidentiary hearing on his motion to withdraw his guilty plea, Sellman contradicted all of the foregoing information that he had previously given under oath at the plea hearing.

{¶ 24} The trial court also found that Sellman's testimony was contradicted by attorney Lopez's testimony, which the trial court deemed credible. Lopez testified that he went over the plea form with Sellman at his office and also outside the courtroom on the day of the plea hearing. During those meetings, Lopez claimed that he advised Sellman that his offense carried a minimum three-year prison sentence and that Sellman was not eligible for judicial release. Lopez testified that any confusion regarding there being a two-year minimum sentence was the product of an early misstatement by the assistant prosecuting attorney that had been quickly corrected. According to attorney Lopez, Sellman was advised before the plea hearing that the minimum sentence he faced was three years in prison and that he was ineligible for judicial release.

{¶ 25} Lopez further testified that, when Sellman paused the plea hearing to ask him a question off the record about his potential sentence, Sellman once again asked him about judicial release. Lopez testified that he responded to Sellman's question by

reiterating what he had previously told him prior to the plea hearing—that he was not eligible for judicial release. Following that reiteration, Lopez testified that he asked Sellman whether he still wanted to plead guilty. Lopez testified that he was prepared to stop the plea hearing if Sellman did not want to go forward, but that Sellman told him that he wanted to move forward with the plea.

{¶ 26} Based on Lopez's testimony, and the information in the plea form that Lopez reviewed with Sellman, we find that it was not unreasonable for the trial court to disbelieve Sellman's claim that he did not know until the last minute that his offense carried a minimum three-year prison sentence and that he was ineligible for judicial release. Even if Sellman had learned of that information at the last minute, the record of the plea hearing indicates that the trial court conducted a Crim.R. 11 compliant plea colloquy during which it expressly reviewed the possible penalties with Sellman, including the three-year minimum possible sentence and his ineligibility for judicial release.

{¶ 27} Following the trial court's advisements, Sellman indicated on the record that he understood the minimum possible sentence, the mandatory nature of his sentence, and his ineligibility for judicial release. The trial court also gave Sellman multiple opportunities to ask questions and to request more time to think about his plea, but Sellman advised the trial court that he had enough time to make his decision to plead guilty and thereafter entered his guilty plea. Therefore, contrary to Sellman's claim otherwise, the record establishes that Sellman had sufficient time to make his decision to plead guilty and that he understood the possible penalties that he faced prior to entering his guilty plea.

{¶ 28} In addition to understanding the possible penalties, the record also

establishes that Sellman understood the nature of the charge and specification to which he pled guilty. We note that Sellman's understanding of the nature of the charge was not at issue during the plea withdrawal proceeding. Therefore, the seventh factor in *Fish*—whether the accused understood the nature of the charges and possible penalties—did not weigh in favor of withdrawing Sellman's guilty plea.

**{¶ 29}** As for the eighth factor, we find there is nothing in the record to indicate that Sellman is perhaps not guilty of the aggravated possession offense in question. Sellman provided no evidence of his innocence at the hearing on his motion to withdraw his guilty plea. Sellman did not even attempt to assert his innocence at the hearing, as he invoked his Fifth Amendment right against self-incrimination when he was asked specific questions about the criminal conduct at issue. The record further indicates that, during an interview with law enforcement, Sellman voluntarily admitted to possessing and trafficking methamphetamine.

**{¶ 30}** Sellman also failed to establish that he had a complete defense to the aggravated possession offense. Although Sellman generally asserts that he could have pursued the defense of entrapment, Sellman failed to present any evidence in support of that defense at the hearing on his motion to withdraw his guilty plea. Sellman alternatively claims that he could have defended himself using a motion to suppress or a motion pursuant to *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).[1] Attorney Lopez, however, testified that there was no basis on which to file either

---

[1] "Pursuant to *Franks*, a search violates the Fourth Amendment's prohibition on unreasonable searches if it is conducted pursuant to a warrant that is based upon an affidavit containing one or more material misrepresentations, and these misrepresentations were made knowingly or in reckless disregard for the truth." (Citations omitted.) *State v. Miser*, 2d Dist. Montgomery No. 25105, 2013-Ohio-1583,

motion. Sellman also provided no specific basis for those motions at the hearing on his motion to withdraw his guilty plea. Therefore, the eighth factor in *Fish* did not weigh in favor of withdrawing Sellman's guilty plea.

**{¶ 31}** Although Sellman's motion to withdraw his guilty plea was made within a reasonable time, and even though there is nothing in the record indicating that the State would be prejudiced by withdrawing his plea, those were only two of nine factors that weighed in favor of a withdrawal. As can be seen from our analysis, the majority of the factors in *Fish* did not weigh in favor of withdrawing Sellman's guilty plea. Most importantly, Sellman failed to provide a reasonable, legitimate basis for the withdrawal, as the record indicates that attorney Lopez and the trial court advised him of the correct minimum prison sentence and his ineligibility for judicial release before he entered his guilty plea. Therefore, under these facts and circumstances, the trial court did not abuse its discretion in overruling Sellman's presentence motion to withdraw guilty plea.

**{¶ 32}** Sellman's first assignment of error is overruled.

## Second Assignment of Error

**{¶ 33}** Under his second assignment of error, Sellman contends that he did not knowingly, intelligently, and voluntarily enter his guilty plea because, at the time he entered his plea, he was confused about the minimum sentence for his offense and was under the mistaken impression that he would be eligible for judicial release. Sellman's claim lacks merit.

---

¶ 12. Thus, a *Franks* motion would have required Sellman to prove that the search warrant for his residence was granted based upon knowing/reckless misrepresentations by the State.

**{¶ 34}** In order to be constitutionally valid and comport with due process, a guilty plea must be entered knowingly, intelligently, and voluntarily. *State v. Bateman*, 2d Dist. Champaign No. 2010CA15, 2011-Ohio-5808, ¶ 5, citing *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). "In order for a plea to be knowing, intelligent, and voluntary, the trial court must comply with Crim.R. 11(C)." (Citation omitted.) *State v. Russell*, 2d Dist. Clark No. 10-CA-54, 2011-Ohio-1738, ¶ 6. "Crim.R. 11(C) governs the process that a trial court must use before accepting a felony plea of guilty or no contest." *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 8. "By following this rule, a court ensures that the plea is knowing, intelligent, and voluntary." *State v. Cole*, 2d Dist. Montgomery No. 26122, 2015-Ohio-3793, ¶ 12, citing *State v. Redavide*, 2d Dist. Montgomery No. 26070, 2015-Ohio-3056, ¶ 12.

**{¶ 35}** Pursuant to Crim.R. 11(C)(2)(a), the court must determine "that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing." Unlike the advisements required in Crim.R. 11(C)(2)(c), which involve constitutional rights and necessitate strict compliance by the trial court, the non-constitutional advisements in Crim.R. 11(C)(2)(a) only require substantial compliance. *Cole* at ¶ 12, citing *State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990). Under the substantial compliance standard, "a slight deviation from the text of the rule is permissible; so long as the totality of the circumstances indicates that 'the defendant subjectively understands the implications of his plea and the rights he is waiving,' the plea may be upheld." *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462,

¶ 31, quoting *Nero* at 108.

{¶ 36} As previously noted, Sellman contends that he did not knowingly, intelligently, and voluntarily enter his guilty plea because he was confused about the minimum sentence for his offense and was under the mistaken impression that he would be eligible for judicial release. This claim is not supported by the record. The record indicates that the trial court conducted a Crim.R. 11 compliant plea colloquy during which the court expressly advised Sellman that he would be subject to a minimum of three years in prison. The trial court also expressly advised Sellman that he would not be eligible for judicial release. The record further indicates that, prior to entering his guilty plea, Sellman reviewed and signed a plea form that contained the same information about his minimum sentence and ineligibility for judicial release. Attorney Lopez also testified to advising Sellman of the three-year minimum sentence and his ineligibility for judicial release prior to the plea hearing.

{¶ 37} Although Sellman paused the plea hearing to ask attorney Lopez a question about his potential sentence, after speaking with Lopez, Sellman advised the trial court that Lopez had answered his question to his satisfaction and thereafter proceeded to enter his guilty plea. As previously discussed, Lopez testified that during the pause in proceedings, he reiterated to Sellman that he would not be eligible for judicial release and that Sellman responded by saying that he still wanted to go forward with pleading guilty. Following that exchange, Sellman advised the trial court that he understood both the minimum possible prison sentence and his ineligibility for judicial release. Sellman also advised the trial court that he had no questions about what the trial court had discussed during the plea hearing.

**{¶ 38}** Sellman's responses at the plea hearing do not indicate any confusion on his part. Other than Sellman's own testimony, which the trial court did not find credible, there is nothing in the record establishing that Sellman was confused about the minimum prison sentence or the fact that he was ineligible for judicial release. Therefore, Sellman's claim to the contrary lacks merit.

**{¶ 39}** Sellman's second assignment of error is overruled.

### Conclusion

**{¶ 40}** Having overruled both assignments of error raised by Sellman, the judgment of the trial court is affirmed.

. . . . . . . . . . . .

FROELICH, J. and TUCKER, J., concur.

Copies sent to:

Janna L. Parker
James A. Anzelmo
Hon. Stacy M. Wall