[Cite as *State v. Wroten*, 2023-Ohio-966.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 29489 |
| | : | |
| v. | : | Trial Court Case No. 2021 CR 01814 |
| | : | |
| MICHAEL WROTEN | : | (Criminal Appeal from Common Pleas |
| | : | Court) |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on March 24, 2023

. . . . . . . . . . .

MATHIAS H. HECK, JR., by MICHAEL P. ALLEN, Attorney for Appellee

KAREN B. GROSETH, Attorney for Appellant

. . . . . . . . . . . .

WELBAUM, P.J.

{¶ 1} Defendant-Appellant, Michael Wroten, appeals from his conviction on one count of rape (force or threat of force), a first-degree felony. After Wroten pled guilty and the court denied his motion to withdraw the plea, the court sentenced Wroten to an agreed

indeterminate sentence of a minimum of four years and a maximum of six years.

{¶ 2} According to Wroten, the trial court failed to give full and fair consideration to his motion to withdraw and unreasonably denied it. Wroten also contends the trial court may have erred in advising him concerning his duties to register as a sex offender, based on what appeared to be an incomplete transcript of the plea hearing. However, the State later filed the entire transcript, and Wroten then supplemented his brief.[1] In the supplement, Wroten contends that the court, in fact, failed to comply with Crim.R. 11(C), and that he was prejudiced by the court's error.

{¶ 3} For the reasons discussed below, we find the assignments of error without merit. As a result, the trial court's judgment will be affirmed.

## I. Facts and Course of Proceedings

{¶ 4} On June 14, 2021, an indictment was filed charging Wroten with four counts of rape (force or threat of force), all first-degree felonies; kidnapping (sexual activity), also a first-degree felony; and assault (knowingly), a first-degree misdemeanor. According to the indictment, the charges were based on events that occurred from April 15, 2021, through April 16, 2021. After Wroten pled not guilty to the charges, the court set bond at $250,000 cash/surety. The court also appointed Jeffrey Gramza as Wroten's counsel.

{¶ 5} After receiving discovery, Gramza filed a motion to suppress on July 2, 2021, seeking suppression of any oral or written statements Wroten had made. Following an evidentiary hearing on October 18, 2021, the court found that Wroten had knowingly,

---

[1] When we refer to the transcript during our discussion, we will be referring to the full transcript that was filed on January 17, 2023.

intelligently, and voluntarily waived his *Miranda* rights and that there was no evidence police officers had used any coercion. The court, therefore, overruled the suppression motion. Decision, Order and Entry Overruling Defendant's Motion to Suppress (November 8, 2021), p. 4-5. On the same day, the court set a January 4, 2022 trial date.

{¶ 6} On January 3, 2022, Wroten entered a guilty plea to one charge of rape, a first-degree felony. At the time, Wroten and Gramza appeared remotely from the jail. The plea was based on the parties' agreement that Wroten would be sentenced to an agreed-upon four-year sentence, which resulted in an indeterminate sentence of four to six years under the Reagan Tokes law. The parties further agreed that Wroten would be listed as a Tier III sex offender and would be required to register and report every 90 days for the rest of his life. Transcript of Proceedings (Plea Hearing, Motion Hearings to Withdraw Plea, Sentencing Hearing) ("Tr."), p. 4-6. During the plea hearing, the court told Wroten that it would select the agreed-upon minimum four-year sentence and that the maximum term would automatically be calculated by taking 50% of the minimum term and adding that to the minimum term. This would result in a sentencing range of a minimum of four years to a maximum of six years. *Id.* at p. 10-11. After accepting Wroten's plea and finding him guilty, the court set a sentencing hearing for January 31, 2022.

{¶ 7} On January 5, 2022, Gramza filed a motion seeking to withdraw as counsel due to a breakdown in communication that would prevent him from effectively representing Wroten. The court granted the motion on January 6, 2022, and ordered that new counsel be appointed. On the same day, the court filed the signed guilty plea

and entry accepting the plea and finding Wroten guilty. Counts two through six were also dismissed.

{¶ 8} On January 25, 2022, the court appointed Lucas Wilder as Wroten's new counsel. Two days later, Wilder filed a motion to withdraw the guilty plea, and the State responded. At a February 2, 2022 hearing, the court heard testimony from Wroten, Jeffrey Gramza, and Tyler Hofacker (a City of Dayton police detective assigned to the case). At the end of the hearing, Wilder asked the court to continue the case so that he could review an issue about a phone download that arose during the hearing. The court agreed and granted Wilder two weeks to look at the information from the phone.

{¶ 9} On February 23, 2022, Wilder filed a motion asking the court to reopen the plea-withdrawal hearing to add testimony from another witness. The State objected but asked to recall its original witnesses if the court reopened the hearing. After the court granted the motion to reopen, another hearing was held. This was before a different judge, as the original judge had retired. At that time, the court heard testimony from A.B., who had lived with Wroten from October 2019 to April 2021. The State did not present any further testimony.

{¶ 10} Following the hearing, the parties submitted post-hearing briefs. The court then issued a decision on May 17, 2022, denying the plea withdrawal motion. During a sentencing hearing on June 6, 2022, the court imposed the previously agreed-upon sentence. This timely appeal followed.

## II. Motion to Withdraw Plea

{¶ 11} Wroten's first assignment of error states that:

The Trial Court Erred in Overruling Appellant's Motion to Withdraw His Guilty Plea.

{¶ 12} Under this assignment of error, Wroten contends that the trial court failed to give full and fair consideration to his motion and unreasonably denied it. According to Wroten, legitimate and reasonable grounds existed for the motion, including evidence that was found which corroborates his innocence. Wroten further argues that he was not fully advised about the severe restrictions that would be imposed on his life by having to register as a sex offender.

{¶ 13} In denying the motion, the trial court applied a manifest injustice standard typically used for post-sentence motions to withdraw. *See* Decision, Order and Entry Overruling Defendant's Motion to Withdraw Guilty Plea (May 17, 2022) ("Decision"), p. 7. The State concedes this was the wrong standard, but it asserts that the judgment can be affirmed because the court also correctly balanced nine factors used to decide pre-sentence withdrawal motions. State's Brief, p. 9-10. Before addressing these points, we will outline the law and standards that apply to plea withdrawal requests.

### A. Applicable Law and Standards

{¶ 14} Under Crim.R. 32.1, "[a] motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." "A 'manifest injustice' comprehends a fundamental flaw in the

path of justice so extraordinary that the defendant could not have sought redress from the resulting prejudice through another form of application reasonably available to him or her." *State v. Brooks*, 2d Dist. Montgomery No. 23385, 2010-Ohio-1682, ¶ 8, citing *State v. Hartzell*, 2d Dist. Montgomery No. 17499, 1999 WL 957746 (Aug. 20, 1999).

{¶ 15} Under this standard, "a postsentence withdrawal motion is allowable only in extraordinary cases." *State v. Smith*, 49 Ohio St.2d 261, 264, 361 N.E.2d 1324 (1977). "The standard is designed to prevent a defendant from pleading guilty in order to test the potential punishment, and then withdraw the plea if the punishment is not desirable." *State v. Sylvester*, 2d Dist. Montgomery No. 22289, 2008-Ohio-2901, ¶ 10, citing *Smith*. Motions to withdraw are addressed to the trial courts' sound discretion, which also involves issues of "the good faith, credibility and weight of the movant's assertions in support of the motion." *Smith* at 264, citing *United States v. Washington*, 341 F.2d 277, 281 (3d Cir.1965). Our review, therefore, is for abuse of discretion.

{¶ 16} " 'Abuse of discretion' has been defined as an attitude that is unreasonable, arbitrary or unconscionable." *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). "[M]ost instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary." *Id.* "A decision is unreasonable if there is no sound reasoning process that would support" it. *Id.* Notably, "a court does not have discretion to misapply the law." *Johnson v. Abdullah*, 166 Ohio St.3d 427, 2021-Ohio-3304, 187 N.E.3d 463, ¶ 38.

{¶ 17} In contrast to post-sentence motions, "a presentence motion to withdraw a

guilty plea should be freely and liberally granted. Nevertheless, it must be recognized that a defendant does not have an absolute right to withdraw a plea prior to sentencing. Therefore, the trial court must conduct a hearing to determine whether there is a reasonable and legitimate basis for the withdrawal of the plea." *State v. Xie*, 62 Ohio St.3d 521, 527, 584 N.E.2d 715 (1992).

{¶ 18} Our application of these standards has varied depending on the procedural and factual posture of particular cases. As we recently observed:

When a defendant discovers before sentencing the particular sentence a trial court intends to impose, we have held that a pre-sentence motion to vacate his plea ordinarily should be treated as a post-sentence motion. This is so because a defendant cannot test the sentencing waters and then move to vacate his plea just before sentencing if he receives an unpleasant surprise. *State v. Wallen*, 2d Dist. Montgomery No. 21688, 2007-Ohio-2129, ¶ 22. We also have recognized, however, that this reasoning does not apply to agreed sentences. "Where a sentence is agreed to as part of a plea bargain, and the trial court has indicated that it is joining in the agreement, there has been no 'unpleasant surprise' to the defendant after 'testing the sentencing waters,' which is the rationale for the stricter standard for a post-sentence motion to withdraw a plea." *Id.* Therefore, when a defendant files a pre-sentence motion to vacate a plea entered as part of a plea deal with an agreed sentence, the motion still should be treated as a presentence motion and judged under the more

lenient standard. *Id.*

*State v. Alexander*, 2d Dist. Montgomery No. 29465, 2023-Ohio-21, ¶ 16-17.

{¶ **19**} To evaluate whether a trial court has abused its discretion in overruling a pre-sentence plea withdrawal request, we have applied a nine-factor test outlined in *State v. Fish*, 104 Ohio App.3d 236, 661 N.E.2d 788 (1st Dist.1995), *overruled on other grounds*, *State v. Sims*, 2017-Ohio-8379, 99 N.E.3d 1056 (1st Dist.). *E.g., State v. Sellman*, 2d Dist. Miami No. 2019-CA-3, 2019-Ohio-4185, ¶ 13.

{¶ **20**} The test includes four factors taken from *State v. Peterseim*, 68 Ohio App.2d 211, 428 N.E.2d 863 (8th Dist.1980), and requires courts to consider:

"(1) whether the accused is represented by highly competent counsel, (2) whether the accused was given a full Crim.R. 11 hearing before entering the plea, (3) whether a full hearing was held on the motion, (4) whether the trial court gave full and fair consideration to the motion, (5) whether the motion was made within a reasonable time, (6) whether the motion sets out specific reasons for the withdrawal, (7) whether the accused understood the nature of the charges and possible penalties, (8) whether the accused was perhaps not guilty of or had a complete defense to the charge or charges, and (9) whether the state is prejudiced by withdrawal of the plea."

*State v. Young*, 2d Dist. Greene No. 2003-CA-89, 2004-Ohio-5794, ¶ 11, quoting *Fish* at 240. "This list is not exhaustive, and other factors will warrant consideration depending upon the merits of each individual case." *Id.* at ¶ 12.

{¶ 21} A balancing test is used, with no single factor being dispositive. *State v. Warrix*, 2d Dist. Montgomery No. 26556, 2015-Ohio-5390, ¶ 30, citing *State v. Preston*, 2d Dist. Montgomery No. 25393, 2013-Ohio-4404, ¶ 20. However, the trial court's ultimate question "is whether there is a 'reasonable and legitimate basis for the withdrawal of the plea.' " *Id.*, quoting *Xie*, 62 Ohio St.3d at 527, 584 N.E.2d 715. We have also consistently said that "a 'change of heart' is an insufficient justification for the withdrawal of a plea." *Warrix* at ¶ 30. Likewise, "a mistaken belief about the plea is not a reasonable basis" for allowing withdrawal. *State v. Dorsey*, 2d Dist. Montgomery No. 28755, 2021-Ohio-226, ¶ 20, citing *State v. Maddickes*, 2d Dist. Clark No. 2013-CA-7, 2013-Ohio-4510, ¶ 15.

{¶ 22} The Supreme Court of Ohio very recently held that "when a defendant discovers evidence that would have affected his decision to plead guilty, he has a reasonable and legitimate basis to withdraw his guilty plea before sentencing." *State v. Barnes*, Ohio Slip Opinion No. 2022-Ohio-4486. ___ N.E.3d ___, ¶ 24 . The court also agreed with the defendant that in this situation, "the *Peterseim* factors and the *Heisa* factors do not apply here." *Id.*, referencing *Peterseim* and *State v. Heisa*, 8th Dist. Cuyahoga No. 101877, 2015-Ohio-2269.[2]

{¶ 23} *Barnes* involved a defendant who pled guilty to a reduced charge of

---

[2] *Heisa* contains four of the additional factors that we have also used for many years, although we have never cited *Heisa* and have relied on other sources, like *Fish*. *E.g.*, *Sellman*, 2d Dist. Miami No. 2019-CA-3, 2019-Ohio-4185, at ¶ 13, and *State v. Rozell*, 2018-Ohio-1722, 111 N.E.3d 861, ¶ 26 (2d Dist.). "Another factor – whether the state would be prejudiced if the defendant were permitted to withdraw his guilty plea – has usually been added to the analysis, for a total of nine factors." *Barnes* at ¶ 33 (Brunner, J., concurring).

involuntary manslaughter and then unsuccessfully moved to withdraw his plea. *Id.* at ¶ 6-10. Although the defendant received only community control sanctions, he appealed from the conviction. His motion to withdraw was based on the fact that his attorneys had withheld video evidence from him, and he had not seen the video before pleading guilty. *Id.* at ¶ 7. This evidence was withheld under Crim.R. 16(C), because the State had labeled it "counsel only." *Id.* at ¶ 4.

{¶ 24} When the defendant was inadvertently allowed to view the video the night before his sentencing hearing, he discovered that it showed he did not fire his gun first, which bolstered his self-defense claim. *Id.* at ¶ 7. The previous video footage that had been released showed the defendant and two others firing guns. However, the footage did not reveal who was responsible for the victim's death, and authorities could not determine who fired the shot that had killed the victim. *Id.*

{¶ 25} In *Barnes*, three justices and a sitting judge joined in the court's opinion and three justices dissented. Two justices who concurred "would go further and would discard the nine-factor analysis that has been created and adopted by Ohio's courts of appeals in favor of a renewed focus on Crim.R. 32.1 and the guiding standards set forth by this court in *State v. Xie*, 62 Ohio St.3d 521, 584 N.E.2d 715 (1992)." *Id.* at ¶ 28 (Brunner, J., concurring).

{¶ 26} Justice Brunner noted that Crim.R. 32.1 and 47 do not contain specific standards, and the Ohio Supreme Court has failed to make any substantive decisions on this point in the 30 years after *Xie* was decided. *Id.* at ¶ 29-31. In the absence of guidance, appellate courts had used a series of considerations based on *Peterseim*,

which pre-dated *Xie*, and *Fish*, 104 Ohio App.3d 236, 661 N.E.2d 788, which was decided three years after *Xie*. *Id.* at 31-32. In total, these cases outlined eight factors, and a ninth (prejudice to the State) had been added, creating a nine-factor test that almost all Ohio appellate districts followed. *Id.* at ¶ 32-33.

{¶ 27} Justice Brunner commented that she did not believe "the potential convenience of weighing formulaic factors always lends itself to just results." *Id.* at ¶ 35. She further remarked that:

> * * * While the nine-factor analysis is tempting to use, whether for consistency or for convenience and speed, Crim.R. 32.1 does not indicate that any such factors or the weighing of them is necessary. In fact, the nine-factor analysis actually distracts from Crim.R. 32.1 and *Xie's* basic message: when a defendant files a presentence motion to withdraw his plea and articulates a reasonable and legitimate basis as to why, the trial court should grant the motion.
>
> * * *
>
> This court decided *Xie* 30 years ago, and our silence is what has allowed the various appellate courts to create and apply this nine-factor weighing analysis to the point that this "test" has overshadowed the basic principles established by *Xie* and Crim.R. 32.1. The nine-factor analysis should not overshadow the exercise of judicial discretion that is needed to analyze a presentence motion to withdraw a guilty plea in accordance with the basic principles established by *Xie* and Crim.R. 32.1. For these

reasons, I would hold that the nine-factor analysis should no longer be used.

*Barnes*, Ohio Slip Opinion No. 2022-Ohio-4486, __ N.E.3d __, at ¶ 36-38 (Brunner, J., concurring).

{¶ 28} Even though only a sitting judge concurred with Justice Brunner, Justice Donnelly (who did not participate in *Barnes*) had previously stated that:

> Our careful examination of the law governing presentence motions to withdraw guilty pleas is long overdue; it has been almost 30 years since this court directly addressed the subject. *See State v. Xie*, 62 Ohio St.3d 521, 584 N.E.2d 715 (1992). Given the dearth of guidance from this court over the years, Ohio's appellate courts have cobbled together their own standards for reviewing plea-withdrawal motions, primarily relying on the set of considerations credited to the First District Court of Appeals' decision in *State v. Fish*, 104 Ohio App.3d 236, 661 N.E.2d 788 (1st Dist.1995), *overruled on other grounds*, *State v. Sims*, 2017-Ohio-8379, 99 N.E.3d 1056, ¶ 15 (1st Dist.).

*State v. Harmon*, 165 Ohio St.3d 1465, 2021-Ohio-4109, ¶ 2 (Donnelly, J., dissenting from the court's denial of review). Justice Donnelly further stressed that the court "should either adopt the foregoing *Fish* factors or articulate our own for the sake of consistency across all of Ohio's appellate districts and stress that the freely-and-liberally-granted standard for presentence plea withdrawal still applies." *Id.* at ¶ 4.

{¶ 29} One dissenting judge in *Barnes* argued that the case should not have been

accepted for a discretionary appeal. *Barnes* at ¶ 43 (Fischer, J., dissenting).[3] In addition, the dissent disagreed with the choice to set aside the nine-factor test in this situation to let the defendant set aside his guilty plea. *Barnes* at ¶ 43, 47, and 70. (Fischer, J., dissenting). After reviewing the record, the dissent also found that the trial court had not abused its discretion by denying the defendant's motion to withdraw his plea. *Id.* at ¶ 49-69. And finally, Justice Fischer criticized the majority for acquiescing in the defendant's request for error correction "[w]ithout taking the opportunity to provide guidance to our appellate courts, either by adopting or rejecting the *Peterseim* and *Heisa* factors or explaining what factors should be considered in deciding a motion to dismiss * * *." *Id.* at ¶ 47.

{¶ 30} The Ohio Supreme Court subsequently denied the State's motion for reconsideration in *Barnes*. *See State v. Barnes*, 168 Ohio St.3d 1492, 2022-Ohio-4785, 200 N.E.3d 284.

{¶ 31} We mention *Barnes* because it is a significant decision, marking the first time the court has specifically discussed the nine-factor test and has deviated from it. Furthermore, the discussion in the case indicates that at some point, the court may address the test itself. However, this has not yet occurred and, until it happens, we will continue to follow the nine-factor test, with the modification the court outlined, i.e., it does not apply in situations like *Barnes*, where a defendant is unaware of evidence until after the plea and the evidence would have affected the plea decision.

---

[3] The other two dissenting justices did not agree with Part I of Justice Fischer's dissent, which contended that the case should be dismissed because it was improvidently accepted. *Barnes* at ¶ 44-48 (Fischer, J., dissenting), and ¶ 70 (Kennedy and DeWine, J.J., concurring in parts II and III of the dissent).

{¶ 32} The current case does not present such a situation. The evidence in question here is material that was downloaded from Wroten's phone after he was arrested. Allegedly, at one time, the phone contained nude photos the victim, P.S., had sent Wroten. Tr. at p. 27-28, 32-33, 45, 50, 52, and 83. The record does not indicate specifically when police obtained the phone and downloaded the contents. However, the downloaded material was not in the discovery the State initially gave to Wroten's counsel. *See* Receipt of Discovery Packet (June 30, 2021).

{¶ 33} After Wroten told his attorney, Jeffrey Gramza, about the phone in late December 2022, Gramza obtained the downloaded material from the prosecutor on December 22, 2021. Tr. at p. 44, 45, 52-53, and 55-56, and State's Ex. 3. However, Gramza did not view the material at the time because the parties were in plea negotiations. *Id.* at p. 31-37, 36-37, and 38-39. He did inform Wroten that he had the download, and Wroten did not ask to see it. *Id.* at p. 52.

{¶ 34} Although the phone's download was not initially provided, it was available before the plea. Furthermore, the downloaded material was well-known to Wroten from the beginning, as the phone was his. Thus, the situation here differs from *Barnes*. Knowing the download's content also could not have affected Wroten's decision to plead guilty, because no inappropriate photos of the victim were on the phone. Tr. at p. 63-64. Consequently, *Barnes* does not impact this case.

{¶ 35} With these principles and points in mind, we will consider the merits of Wroten's argument.

## B. Discussion

**{¶ 36}** As noted, the State admits the trial court used the wrong test but argues that because the court applied the correct balancing test, we can conclude the court did not abuse its discretion. We agree. *See Alexander*, 2d Dist. Montgomery No. 29465, 2023-Ohio-21, at ¶ 19-20 (noting the trial court incorrectly used the post-sentencing standard, but finding no abuse of discretion).

**{¶ 37}** During the plea withdrawal hearing, Wroten testified that he wanted to withdraw his plea for these reasons; (1) he thought he was forced to plea; (2) he thought trial was the next day; and (3) Gramza had failed to mention everything in the discovery packet until the day of the plea. Tr. at p. 23. Wroten also stated that he pled guilty because Gramza had said he was not ready for trial. *Id.* at p. 25, 30, and 35. Additionally, Wroten said Gramza did not explain to him before the plea hearing that he would be required to register as a sex offender. *Id.* at p. 24-25.

**{¶ 38}** Wroten further stated that while Gramza had been his attorney for several months, there had been no prior discussion about pleading guilty and no discussions about plea bargains; to the contrary, he had told Gramza they were going to trial. *Id.* at p. 26. In addition, Wroten said Gramza only met with him three times during the entire time Gramza represented him. *Id.* at p. 34.

**{¶ 39}** According to Wroten, he was innocent, knew the victim, and had had prior sexual contact with her. They had also sent each other naked pictures of themselves through the Messenger application on Facebook. *Id.* at p. 27-28. Wroten stated that he had told Gramza prior to the plea hearing that the encounter with the victim was

consensual. When Gramza asked if Wroten had evidence to back it up, Wroten said the police had his phone, and there had been pictures on it previously. Gramza said he would look into it but never got back to him. *Id.* at p. 32-33. Finally, Wroten stated that he told Gramza immediately after the plea hearing (within a few minutes) that he wanted to withdraw his plea and wanted new counsel. *Id.* at p. 30-31.

**{¶ 40}** Gramza also testified at the plea hearing. His testimony directly contradicted Wroten's account in several ways.

**{¶ 41}** Gramza had been an attorney for 31 years and had handled around 2,000 criminal cases. Tr. at p. 42. Gramza estimated that he had visited Wroten in jail maybe a dozen times and had communicated with him many times on the SmartJAIL (email) system. *Id.* at p. 43-44. Gramza had also provided Wroten with the entire discovery packet, other than things he was not permitted to disclose since this was a rape case. *Id.* at p. 44.

**{¶ 42}** Gramza agreed that Wroten had told him this was a consensual encounter and that there might be evidence on Wroten's phone. *Id.* at p. 45. Gramza investigated that and received a download of the phone that the police had taken. *Id.* As to whether he had found any corroborating evidence on the download, Gramza stated: "I don't recall that I did. I can't say what – exactly it said. I know that by the time I received that, we were talking plea at that point." *Id.* Gramza later said he received a phone dump and let Wroten know that, but Wroten did not ask to look at it. *Id.* at p. 52. Gramza did not scroll through the phone dump to look for pictures because by the time he received it, they were already talking about a plea, and Wroten had said he wanted to make an offer.

*Id.* at p. 50 and 52.

**{¶ 43}** Leading up to the January 3, 2022 plea hearing, Gramza was in communication with Wroten. Plea negotiations were going on with the prosecutor at that point. *Id.* Gramza was still preparing for trial and denied telling Wroten that he was not prepared for trial. *Id.* at p. 45-46. Gramza had not previously asked for a continuance during the case that he could recall, and said if he had not been ready, he would have asked the court to continue the trial. *Id.* at p. 46.

**{¶ 44}** Gramza further said that, days before the plea hearing, he and Wroten had discussed the plea and what the sentence and plea would be. On the day of the plea, before court, they also discussed sex offender registration. Tr. at p. 47-48. Furthermore, Gramza denied that Wroten had said he wanted to withdraw the plea before Gramza left the jail the day of the plea hearing. To the contrary, the first time Gramza heard of this was a day or two later; it was not the day of the plea hearing. *Id.* at p. 49 and 54. Wroten communicated this to Gramza via email. *Id.* at p. 55.

**{¶ 45}** According to Gramza, Wroten wanted a three-year sentence. Before Gramza could communicate this offer, the prosecutor sent an email on December 22, 2021, making an offer of four to eight years, with dismissal of all counts other than the first. Tr. at p. 56 and State's Ex. 3. After talking with Wroten, Gramza sent back an offer of four years on December 28, 2021, and this is the sentence the State accepted. *Id.* The plea hearing took place several days later. *Id.* at p. 57.

**{¶ 46}** Detective Hofacker of the Dayton Police Department also testified at the plea hearing. Hofacker identified State's Ex. 1, which contained various emails that

Wroten sent while he was in jail.   *Id.* at 58-59.   In a December 24, 2021 email, Wroten discussed his plea deal with his brother, stating that it was an "open" deal of four to eight years.   Wroten further said he had written to his attorney saying he might take the deal but only if his attorney could get it capped at three or four years.   *Id.* at p. 60 and State's Ex. 1, p. 1.   The emails also showed that Wroten was aware at least by December 29, 2021, that the proposed four-year deal had been accepted.   *See* State's Ex. 1 at p. 4.

{¶ 47} During his testimony, Hofacker additionally provided the visitor log for Wroten.   The log revealed that Gramza had visited Wroten six times between August 5, 2021, and January 3, 2022.   Tr. at p. 61-62 and State's Ex. 2.   This included two visits in November 2021 and two in December 2021.   *Id.*

{¶ 48} Finally, Hofacker said that he had obtained a search warrant and had downloaded the contents of Wroten's phone.   Tr. at p. 63.   Hofacker then examined the entire download and found no photos of an inappropriate nature of either the victim or Wroten.   *Id.*   During this review, Hofacker looked at all the messages, photographs, and GPS locations that were on the phone.   *Id.* at p. 64.   Furthermore, Hofacker had previously interviewed Wroten, who said nothing about potentially inappropriate messages between Wroten and the victim; Wroten only said there were pictures of marijuana on his phone.   *Id.*

{¶ 49} As noted, Wroten's newly appointed counsel (Lucas Wilder) asked for further time to look into the phone issue, and the trial court later granted a request for a second plea withdrawal hearing.   At the beginning of the second hearing, the new judge stressed that she had watched the videos of the plea hearing as well as the first plea

withdrawal hearing that had occurred on February 2, 2022.   *Id.* at p. 73.

{¶ 50} Following the court's remarks, Wilder noted that he had gone through the phone download and had also reviewed it with Wroten.   At that time, Wilder became aware that some messages had been deleted.   *Id.* at p. 75.   Subsequently, Wilder, the prosecutor, and the detective looked at the actual phone, but they could not access the phone.   *Id.*   All the phone's contents had been downloaded when it was taken into evidence.   However, the screen was locked at that time, perhaps from an inappropriate remote attempt to get into the phone, and they were unable to access it.   *Id.* at p. 77-78.

{¶ 51} Wilder then presented testimony from A.B., who had been in a relationship with Wroten from October 2019 until April 2021.   Tr. at p. 79-80.   The victim, P.S., had originally been introduced to A.B. as a girlfriend of Wroten's friend.   *Id.* at p. 81.   However, in either March or April 2021, A.B. became aware of messages from P.S. that were on Wroten's phone.   At the time, A.B. was paying for a hotel for Wroten because he was homeless, and she visited him there on weekends.   *Id.* at p. 82.

{¶ 52} One weekend, when A.B. came to the hotel, Wroten and P.S. were on the phone.   A.B. then took Wroten's phone, scrolled through the messages, and saw partially nude pictures of P.S.   The pictures had been sent to Wroten, and A.B. recognized P.S.'s face.   *Id.* at p. 82-83.   There were four or five photos.   *Id.* at p. 84.   At that point, A.B. had "words" with P.S., blocked P.S. on Wroten's phone, and deleted the whole conversation, including the photos.   *Id.* at p. 83.   Wroten had gotten those pictures weeks prior to that night, which was in March or April 2021.   *Id.* at p. 84-86.

{¶ 53} As noted, after the hearing, the judge filed a decision denying the motion to

withdraw. The judge found that only one of the nine factors (timeliness of filing the motion) weighed in Wroten's favor. Decision at p. 7. The court further found that Wroten had known about the evidence on the phone before his plea and that A.B.'s testimony was not credible. *Id.*

{¶ 54} In evaluating the trial court's decision, we have reviewed the entire record, including the exhibits (which include the video of the plea hearing), and we find no abuse of discretion. Concerning the nine factors, there is no question that Wroten's counsel was highly competent. Wroten also had a full Crim.R. 11 hearing before the plea and a full and complete hearing on the motion to withdraw. In fact, he was given two hearings.

{¶ 55} Concerning whether the trial court gave the motion full and fair consideration, Wroten complains that the trial court did not give any reasons for finding that A.B. was not credible. Wroten Brief, p. 16. In particular, Wroten notes that A.B. was not there for purposes of lying on his behalf and had to be subpoenaed. *Id.*

{¶ 56} However, the trial court did not have to give reasons for finding that A.B. lacked credibility. We have also stressed many times that "[t]he decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997). This deference applies in many areas, including credibility assessment in plea withdrawal situations. *E.g., State v. Marshall*, 2d Dist. Montgomery No. 23243, 2009-Ohio-5746, ¶ 16; *Preston*, 2d Dist. Montgomery No. 25393, 2013-Ohio-4404, at ¶ 22.

{¶ 57} The motion to withdraw the plea was made within a reasonable time, as the

trial court found.   Concerning the specific reasons for the motion, Wroten concedes that his original reasons for wanting to withdraw his plea changed, but connects this to the incompetence of his original counsel and the fact that "new evidence" was discovered during the first plea withdrawal hearing.

{¶ 58} As a preliminary point, the trial court could have reasonably found that some of Wroten's testimony was not credible.   As noted, Wroten testified that he wanted to change his plea because he felt forced to plea, with the trial being the next day.   Wroten also said that he and Gramza had no prior discussion about pleading guilty or about plea bargains, because he told Gramza they were going to trial.   However, the other evidence in the record contradicted this testimony.   As evidenced by Wroten's emails to his brother, Wroten and Gramza, in fact, had discussions about plea bargains and pleading guilty.   Moreover, Wroten knew, by December 29, 2021, at the latest that his plea offer had been accepted.   This was several days before the January 3, 2022 plea hearing, and Wroten had ample time to consider the plea.

{¶ 59} Other matters, like notification of the sex offender registration requirement, were also disputed.   For example, Wroten claimed he did not know about the registration requirement, while Gramza said it was explained before the plea hearing.   The trial court was free to disbelieve Wroten and to credit Gramza's testimony on disputed matters.

{¶ 60} Furthermore, for the reasons previously discussed, evidence of the phone download was not "new" evidence.   Wroten was in the best position to know the content of his phone.   If, in fact, it contained photos or other material supporting his case, Wroten would have known this.   In addition, assuming for the sake of argument that A.B.'s

testimony was true, Wroten would have known long before the plea hearing that no evidence was on his phone (which would not help his case) and that A.B. could testify on his behalf. Consequently, the alleged additional reasons for Wroten's desire to withdraw his plea were not persuasive.

{¶ 61} Regarding whether Wroten understood the nature of the charges and possible penalties, the trial court very clearly and thoroughly explained all of this during the plea hearing. *See* Tr. at p. 5-19.[4] If Wroten did not understand anything, he had an opportunity to question the court and his attorney. Instead, Wroten stated that he had discussed everything with his attorney and repeatedly said he understood everything.

{¶ 62} When the court informed Wroten at the very beginning of the hearing about the sex offender registration requirement and asked if that was consistent with his understanding in terms of entering his plea that day, Wroten said, "Yes." *Id.* at p. 6. Wroten also affirmed that he had had enough time to consult with Gramza and that he was satisfied with his representation. *Id.* at p. 15. Finally, at the end of the plea hearing, the court asked Wroten if he had any questions or if there was anything about the process that he did not understand. Wroten said, "No." *Id.* at p. 17. Accordingly, this factor does not weigh in Wroten's favor.

{¶ 63} The eighth factor is whether Wroten was "perhaps not guilty of or had a complete defense to the charge or charges." A few emails that Wroten sent to his brother

---

[4] We do note that our discussion of the second assignment of error concludes that the trial court did not completely fulfill the "maximum-penalty-advisement requirement" as it relates to sex offender residency and community notification. However, we also find that no prejudice occurred as a result. Other than this minor issue, the trial court's discussion during the plea hearing was very detailed and full.

indicated that Wroten professed innocence as to the charges.   *See* State's Ex. 1, p. 1 and 14.   Wroten also claimed during the withdrawal hearing that he was innocent.   Tr. at p. 27, 29, 31, and 32.   However, Wroten had no evidence to support his contention, other than his own testimony and perhaps that of a witness the trial court did not find credible.   This factor is neutral or, at best, slightly in Wroten's favor.   We give little weight to this factor because Wroten would have been aware of his guilt or innocence from the beginning of the case.   However, he never mentioned the innocence claim to the detective who interviewed him, and he waited almost until the trial date to even mention the alleged consensual sex to his attorney.   These facts were inconsistent with Wroten's not being guilty of the charges or of his having a defense.

{¶ 64} The final factor is prejudice to the State, and the State admits there is nothing in the record concerning prejudice.   State's Brief at p. 9.

{¶ 65} While our analysis finds at least one more factor weighing in Wroten's favor than the trial court found, we still do not find that the court's decision was arbitrary, unreasonable, or unconscionable.   Prejudice to the State is likely not a significant consideration in most cases, and while Wroten claims he was innocent, he already knew of the relevant evidence, if any, well before pleading guilty.   Accordingly, the first assignment of error is overruled.

III.   Alleged Error in Advising of Sex Offender Registration Duties.

{¶ 66} Wroten's second assignment of error states that:

The Trial Court May Have Erred in Fully Advising Appellant of His

Duties to Register as a Tier III Offender; However, It Is Unclear as the Written Transcript Is Not Complete.

**{¶ 67}** Under this assignment of error, Wroten initially claimed that the trial court may not have fully advised him of his duties to register as a sex offender. However, because the full transcript had not yet been filed, Wroten said he would file a supplemental brief if needed.

**{¶ 68}** After the full plea transcript was filed on January 17, 2023, Wroten filed a supplemental brief on February 17, 2023. His argument in this context is that his plea was not knowingly, voluntarily, and intelligently entered because the trial court failed to inform him of community notification requirements for sex offenders. Wroten argues that he was prejudiced by the trial court's failure because he was "vocal" throughout the case that he was making the plea decision based on counsel's advice and what he thought was the quickest way to get back to his daughter. Supplemental Brief, p. 3. Wroten acknowledges that he did not mention this during the plea withdrawal hearings. *Id.*

**{¶ 69}** "Because a no-contest or guilty plea involves a waiver of constitutional rights, a defendant's decision to enter a plea must be knowing, intelligent, and voluntary." *State v. Dangler*, 162 Ohio St.3d 1, 2020-Ohio-2765, 164 N.E.3d 286, ¶ 10, citing *Parke v. Raley*, 506 U.S. 20, 28-29, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992). (Other citations omitted.) "If the plea was not made knowingly, intelligently, and voluntarily, enforcement of that plea is unconstitutional." *Id.*

**{¶ 70}** "When a trial court fails to explain the constitutional rights that a defendant waives by pleading guilty or no contest, we presume that the plea was entered

involuntarily and unknowingly, and no showing of prejudice is required." *Id.* at ¶ 14, citing *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, ¶ 31. The constitutional rights in question are "those set forth in Crim.R. 11(C)(2)(c): the right to a jury trial, the right to confront one's accusers, the privilege against self-incrimination, the right to compulsory process to obtain witnesses, and the right to require the state to prove guilt beyond a reasonable doubt." *Id.*, citing *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 19. However, "when a trial court fails to fully cover other 'nonconstitutional' aspects of the plea colloquy, a defendant must affirmatively show prejudice to invalidate a plea." *Id.*, citing *Veney* at ¶ 17.

{¶ 71} After making these remarks, the court stated in *Dangler* that:

Properly understood, the questions to be answered are simply: (1) has the trial court complied with the relevant provision of the rule? (2) if the court has not complied fully with the rule, is the purported failure of a type that excuses a defendant from the burden of demonstrating prejudice? and (3) if a showing of prejudice is required, has the defendant met that burden?

*Dangler* at ¶ 17.

{¶ 72} In *Dangler*, the court described the specific issue as "compliance with Crim.R. 11(C)(2)(a) which requires that the trial court determine that the defendant is 'making the plea voluntarily, with understanding of * * * the maximum penalty involved.' " *Id.* at ¶ 18. "Thus, a threshold question is whether the classification of an offender as a sex offender and the various obligations that come with that classification are part of the 'penalty' that is imposed on a defendant for his crime." *Id.*

{¶ 73} To answer this question, the court first assumed that "the [classification] scheme as a whole constitutes a penalty for purposes of Crim.R. 11." *Id.* at ¶ 20, citing *State v. Williams*, 129 Ohio St.3d 344, 2011-Ohio-3374, 952 N.E.2d 1108. The court then disagreed with the Sixth District Court of Appeals' conclusion that "it was not enough for the trial court to inform [the defendant] that he was subject to the sex-offender-registration scheme; the trial court was also required to separately go over the registration and in-person-verification requirements, community-notification provisions, and residency restrictions imposed by R.C. Chapter 2950." *Id.* at ¶ 21. The court also disagreed with the Sixth District's conclusion that "because the trial court failed to do so, this case fell under the complete-noncompliance exception and * * * [the defendant] was therefore excused from establishing prejudice." *Id.*

{¶ 74} These disagreements were based on the fact that each part of the sex offender classification is not "a discrete criminal penalty." *Dangler*, 162 Ohio St.3d 1, 2020-Ohio-2765, 164 N.E.3d 286, at ¶ 21. Rather than being discrete penalties as the Sixth District believed, *Williams* did not establish that "any specific element in the statutory scheme" constituted punishment. Instead, the "aggregate" statutory changes rendered retroactive application punitive. *Id.* at ¶ 22, citing *Williams* at ¶ 21. Thus, the statutory scheme as a whole, which consisted of both remedial and punitive elements, was what *Williams* had deemed "punitive." *Id.* Given these points, the Supreme Court of Ohio held that because the trial court had advised the defendant "that he would be subject to the registration requirements of that statutory scheme," the "court did not completely fail to comply with Crim.R. 11(C)(2)(a)'s maximum-penalty-advisement requirement." *Id.*

{¶ 75} In the case before us, the trial court notified Wroten about the registration requirements before the plea but did not discuss public notification or residency. Tr. at p. 5 and 15-16. As a result, the situation here resembles what occurred in *Dangler*.

{¶ 76} In cases decided after *Dangler*, courts have even held that partial compliance existed where there was "execution of a written plea agreement advising [the defendant] he would be subject to Tier II and III sex-offender requirements, combined with the prosecutor's statement at the plea hearing." *State v. McFadden*, 10th Dist. Franklin No. 20AP-179, 2021-Ohio-2204, ¶ 35 (agreeing with *State v. Dornoff*, 6th Dist. Wood No. WD-16-072, 2020-Ohio-3909, ¶ 17, that the defendant needed to show prejudice). In *Dornoff*, the trial court did not inform the defendant of the requirements; the only statement was from the prosecutor, who noted the defendant would be subject to Tier III registration. In addition, while the plea form the defendant signed indicated he would be subject to registration, it did not outline the punitive consequences. *Dornoff* at ¶ 4. Nonetheless, the defendant still had to show prejudice. *Id.* at ¶ 17.

{¶ 77} Similarly, in *McFadden*, the trial court did not advise the defendant at the plea hearing, but the prosecutor stated that the defendant would be required to register as a Tier III offender. *McFadden* at ¶ 33. However, the plea form did say that the defendant would be required to comply with Tier III requirements, including residency conditions. *Id.*

{¶ 78} As noted, in the case before us, the trial court did explain registration requirements for a Tier III sex offender. The plea form that Wroten signed also provided the following specific information: (1) Wroten would not be allowed to reside within 1,000

feet of a school, preschool, or daycare; (2) Wroten would be subject to registration every 90 days for life; and (3) as a Tier III sex offender, Wroten would be subject to community notification. *See* Entry and Order (Jan. 6, 2022), p. 1. Thus, Wroten received more information than these other defendants, and the trial court did not fail to completely comply with Crim.R. 11's "maximum-penalty-advisement requirement." As a result, Wroten must show that he was prejudiced.

**{¶ 79}** We further note that during the plea hearing, Wroten said that he understood the offender registration requirement. Tr. at p. 6. He further stated that he had consulted with his attorney about the content of the waiver and plea form. And, after Wroten signed the plea form, he indicated that he understood the plea process and had no questions for the court. *Id.* at p. 8 and 17.

**{¶ 80}** Turning now to the prejudice component, "[t]he test for prejudice is 'whether the plea would have otherwise been made.' " *Dangler*, 162 Ohio St.3d 1, 2020-Ohio-2765, 164 N.E.3d 286, at ¶ 16, quoting *State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990). After reviewing the record, the Supreme Court of Ohio concluded in *Dangler* that nothing indicated that the defendant would have refused to enter a plea had he "been more thoroughly informed of the details of the sex-offender-classification scheme." *Id.* at ¶ 24.

**{¶ 81}** As noted, Wroten claims his situation differs because it is reasonable to infer that he would not have pled guilty if he had known of the registration requirements. Wroten Supplemental Brief at p. 3. According to Wroten, this is because he was allegedly "vocal" throughout the case about his reliance on counsel and his desire to get

back quickly (from prison) to his daughter. *Id.*

{¶ 82} We are not persuaded by this argument. As noted, Wroten did not make any such statements during the plea withdrawal hearing, which would have been the logical time to do so. Furthermore, Wroten's counsel testified that he had discussed sex offender registration with Wroten before the plea hearing. Tr. at p. 48. While Wroten argues that he was not informed about sex registration, his testimony in the plea hearing was contradictory. First, Wroten stated that Gramza did not tell him about sex offender registration before it came up in court during the plea hearing. *Id.* at p. 24-25. However, Wroten later said that on the day of the plea hearing, Gramza "made it [the sentence] open between four to six and then brought up to – the last part about having to register." *Id.* at p. 26. This indicates clearly that Gramza did speak to Wroten about registration before the plea hearing. Due to these contradictions, Wroten's testimony is not credible on its face.

{¶ 83} We note that in emails to A.B. on January 3, 2022, and to his brother on January 4, 2022, Wroten claimed that his attorney had failed to tell him that he would have to register as a sex offender until he died. State's Ex. 1 at p. 7-8. This is some evidence that could support Wroten's claim. However, as we noted, Wroten admitted at the plea withdrawal hearing that his attorney had told him about the sex offender registration requirement. Therefore, his later statements lack credibility.

{¶ 84} Furthermore, Wroten was not vocal "throughout the case" about his desire to get back to his daughter. The only evidence in this regard (emails the State submitted) relates only to the time between December 23, 2021, and January 24, 2022 – hardly the

entire case, since the indictment was filed six to seven months earlier. Furthermore, as we said, the email Gramza sent to the prosecutor before the plea supports Gramza's testimony that Wroten wanted to make an offer to the State.

**{¶ 85}** Some emails to Wroten's brother do indicate that in pleading guilty, Wroten was concerned about both his daughter and grandmother, and wanted to avoid a potential 15 to 55-year sentence if he lost at trial. State's Ex. 1 at p. 2, 4, 6, 7, and 13. However, these are matters any defendant facing trial might consider and are entitled to little weight. Accordingly, we find no prejudice that warrants setting Wroten's plea aside.

**{¶ 86}** Based on the preceding discussion, the second assignment of error is overruled.

### IV. Conclusion

**{¶ 87}** Both of Wroten's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . .

TUCKER, J. and HUFFMAN, J., concur.