[Cite as *State v. Alexander*, 2023-Ohio-21.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 29465 |
| | : | |
| v. | : | Trial Court Case No. 2021 CR 00643 |
| | : | |
| DAJAHNN P. ALEXANDER | : | (Criminal Appeal from Common Pleas |
| | : | Court) |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on January 6, 2023

. . . . . . . . . . .

MATHIAS H. HECK, JR., by RICKY L. MURRAY, Attorney for Appellee

ADAM J. ARNOLD, Attorney for Appellant

. . . . . . . . . . . . .

LEWIS, J.

{¶ 1} Defendant-Appellant Dajahnn P. Alexander appeals from his convictions for involuntary manslaughter, tampering with evidence, and bribery. For the following reasons, we affirm the judgment of the trial court.

I.      Facts and Course of Proceedings

{¶ 2} On March 9, 2021, Alexander was indicted by a Montgomery County grand jury on two counts of murder, two counts of felonious assault, and one count of tampering with evidence related to the death of Jermaine Lewis in October 2020. The murder and felonious assault counts contained firearm specifications. Lucas Wilder was appointed as trial counsel for Alexander. After a series of continuances and rulings on motions, a trial was scheduled for November 15, 2021.

{¶ 3} On November 10, 2021, the State filed a "Notice of Intent to Use Statements Pursuant to Forfeiture by Wrongdoing and Evidence Showing Such Forfeiture by Wrongdoing." The trial court held a hearing to determine whether Alexander had engaged in wrongdoing. Ultimately, the trial court found that Alexander had engaged in wrongdoing that caused the unavailability of three key witnesses for trial. Therefore, the trial court found that Alexander had forfeited his rights to confront witnesses and raise objections to evidence. Alexander's improper contact with witnesses also led to a re-indictment on bribery and obstruction charges. At Alexander's request, and over the State's objection, the court rescheduled the trial for January 2022.

{¶ 4} On January 11, 2022, Alexander entered into a plea agreement with the State. In return for pleading guilty to involuntary manslaughter, tampering with evidence,

and bribery, the State agreed to drop the other counts. The parties agreed to a prison sentence of 23 years, and Alexander promised that he would not seek judicial release. After a plea colloquy, Alexander entered a guilty plea, and the trial court found him guilty of the three charges. The next day, Alexander appeared before the trial court again to allow the parties to correct the plea form that was signed the previous day. The trial court explained to Alexander that it had made a misstatement during the plea colloquy regarding whether the prison term for the offense of involuntary manslaughter was mandatory by law. According to the trial court, Alexander normally would be eligible for community control sanctions for that particular offense. Pursuant to the plea agreement, however, the parties agreed that prison would be imposed rather than community control sanctions. This correction was made on the plea form and, after consulting with counsel, Alexander signed the revised form and ratified his guilty plea. The matter was then scheduled for sentencing.

{¶ 5} On January 28, 2022, prior to sentencing, Alexander's trial counsel filed a motion to withdraw as counsel, which was granted. Ben Swift was appointed as new counsel for Alexander. On February 15, 2022, Swift filed a motion to withdraw Alexander's guilty plea. A hearing on the motion was held on March 25, 2022.

{¶ 6} Alexander testified first at the hearing. Alexander testified that his original trial counsel, Wilder, had visited him in jail approximately ten times during the course of his representation and had provided him with the discovery packet. March 25, 2022 Hearing Transcript, 141-142. According to Alexander, he eventually wanted to replace Wilder with another attorney and told Wilder this several times, but Wilder told him that

Alexander could not take him off his case unless Alexander found and paid for a private practice attorney. *Id.* at 143-145, 151. Alexander believed that Wilder was not working well enough for him and that Wilder was giving Alexander different advice than Wilder was giving Alexander's family. *Id.* at 143-144. Alexander and his family hoped to hire a private attorney, but neither Alexander nor his family had enough money to hire him. *Id.* at 145.

{¶ 7} Alexander testified that he was the one who came up with offering a plea deal to the State totaling 23 years of imprisonment. *Id.* at 152. He felt like he had no choice but to plea because he could not fire Wilder. *Id.* at 163-169. Although he understood that he would get 23 years in prison, Alexander testified that he had not understand the mandatory time. *Id.* at 154. Alexander did not tell the trial court that he was confused. *Id.* at 155. On cross-examination, Alexander conceded that he knew that he would be getting 23 years in prison and that he had been able to do some legal research before he made the plea offer to the State. *Id.* at 166, 168-170.

{¶ 8} Attorney Wilder testified next at the hearing. According to Wilder, he had had a good relationship with Alexander and had visited him at least 20 times in jail and sent him approximately 100 emails. *Id.* at 181-182. Wilder recalled Alexander looking into hiring a private attorney, but Alexander's family could not come up with sufficient money to do so. *Id.* at 183. Wilder did not believe communication had ever deteriorated to the point of warranting his withdrawal as trial counsel, and he had never told Alexander that he could not get new trial counsel. Further, Alexander never told Wilder that he did not want Wilder as his attorney. *Id.* at 182, 193. Wilder explained the gun specifications

to Alexander. The gun specifications needed to be done the way they were in order to get to the 23 years that Alexander desired. *Id.* at 184-186. Alexander never expressed any confusion to Wilder about the terms of the guilty plea. *Id.* at 198-199.

{¶ 9} Detective Troy Dexter also testified at the hearing. Detective Dexter worked for the Butler Township Police Department. He documented Alexander's attempts to communicate with witnesses and stated that he had been able to serve subpoenas on only one of three trial witnesses. *Id.* at 200-204.

{¶ 10} At the conclusion of the hearing, the trial court found Wilder more credible than Alexander and orally overruled Alexander's motion to withdraw his plea. The trial court memorialized this decision in a March 28, 2022 entry. The trial court sentenced Alexander to a total of 23 years in prison. Alexander filed a timely notice of appeal.

II. The Trial Court Did Not Abuse Its Discretion in Denying Alexander's Motion to Withdraw His Guilty Plea

{¶ 11} Alexander's two assignments of error are interrelated and will be addressed together. The assignments of error are as follows:

THE TRIAL COURT ERRED IN APPLYING AN ELEVATED STANDARD TO THE MOTION TO WITHDRAW PLEA.

THE TRIAL COURT'S APPLICATION OF THE HIGHER STANDARD IN THE WITHDRAW OF PLEA HEARING WAS NOT HARMLESS ERROR.

{¶ 12} We review decisions on motions to withdraw a guilty plea for an abuse of

discretion. *State v. Greenlee*, 2d Dist. Montgomery Nos. 28467, 28468, 2020-Ohio-2957, ¶ 11. Abuse of discretion has been defined as an attitude that is "unreasonable, arbitrary or unconscionable." *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). "It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary." *Id.* "A decision is unreasonable if there is no sound reasoning process that would support that decision." *Id.*

{¶ 13} Crim.R. 32.1 governs withdrawals of guilty pleas and provides that "[a] motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice, the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." Based on the language of Crim.R. 32.1, differing tests have developed based on whether the motion to withdraw a plea is made before or after sentencing.

{¶ 14} Generally, "a presentence motion to withdraw a guilty plea should be freely and liberally granted." *State v. Xie*, 62 Ohio St.3d 521, 527, 584 N.E.2d 715 (1992). However, a "defendant does not have an absolute right to withdraw a plea prior to sentencing." *Id.* "Even under the more lenient pre-sentence standard, a defendant must show a 'reasonable and legitimate basis for the withdrawal of the plea.' " *State v. Williamson*, 2d Dist. Montgomery No. 21965, 2008-Ohio-4727, ¶ 13, quoting *Xie* at 527. "A change of heart is not enough," and a trial court's finding regarding a defendant's true motivation is entitled to deference. *Id.* at ¶ 13.

{¶ 15} If the motion to withdraw a guilty plea was made post-sentence, however, the defendant instead bears the higher burden of establishing a manifest injustice. *State v. Harris*, 2d Dist. Montgomery No. 19013, 2002-Ohio-2278, ¶ 7, citing *State v. Smith*, 49 Ohio St.2d 261, 361 N.E.2d 1324 (1977), paragraph one of the syllabus. A post-sentence motion to withdraw a guilty plea is allowable only in extraordinary cases. *State v. Kongkeo*, 8th Dist. Cuyahoga No. 96691, 2012-Ohio-356, ¶ 2, citing *Smith* at 264.

{¶ 16} When a defendant discovers before sentencing the particular sentence a trial court intends to impose, we have held that a pre-sentence motion to vacate his plea ordinarily should be treated as a post-sentence motion. This is so because a defendant cannot test the sentencing waters and then move to vacate his plea just before sentencing if he receives an unpleasant surprise. *State v. Wallen*, 2d Dist. Montgomery No. 21688, 2007-Ohio-2129, ¶ 22. We also have recognized, however, that this reasoning does not apply to agreed sentences. "Where a sentence is agreed to as part of a plea bargain, and the trial court has indicated that it is joining in the agreement, there has been no 'unpleasant surprise' to the defendant after 'testing the sentencing waters,' which is the rationale for the stricter standard for a post-sentence motion to withdraw a plea." *Id.* Therefore, when a defendant files a pre-sentence motion to vacate a plea entered as part of a plea deal with an agreed sentence, the motion still should be treated as a pre-sentence motion and judged under the more lenient standard. *Id.*

{¶ 17} The trial court construed Alexander's motion as a post-sentence motion and applied the manifest injustice standard. Alexander contends that the trial court should

have instead applied the pre-sentence, more liberal standard to his motion. The State concedes that the trial court applied the incorrect standard. The State's concession is consistent with our precedent. *See State v. Waters*, 2d Dist. Montgomery No. 29346, 2022-Ohio-3166, ¶ 12, citing *State v. Simpson,* 2d Dist. Montgomery No. 24266, 2011-Ohio-6181, ¶ 8-10.

{¶ 18} Identifying the trial court's error, however, does not end our analysis. In evaluating whether a trial court has abused its discretion in overruling a pre-sentence motion to withdraw a plea, we review the following nine factors: 1) whether the accused is represented by highly competent counsel; 2) whether the accused was given a full Crim.R. 11 hearing before entering the plea; 3) whether a full hearing was held on the motion; 4) whether the trial court gave full and fair consideration to the motion; 5) whether the motion was made within a reasonable time; 6) whether the motion sets out specific reasons for the withdrawal; 7) whether the accused understood the nature of the charges and possible penalties; 8) whether the accused was perhaps not guilty of or had a complete defense to the charge or charges; and 9) whether the state is prejudiced by withdrawal of the plea. *State v. Miller*, 2d Dist. Montgomery No. 29039, 2021-Ohio-2606, ¶ 15. "Consideration of these factors involves a balancing test and no single factor is dispositive." *Id.* at ¶ 16, citing *State v. Massey*, 2d Dist. Champaign No. 2015-CA-1, 2015-Ohio-4711, ¶ 11.

{¶ 19} Although it ultimately applied the manifest injustice standard to Alexander's motion to withdraw, the trial court also conducted the analysis of the nine factors involved in the pre-sentence standard. At the hearing on the motion to withdraw, the trial court

discussed the nine factors and found that only the timeliness of the motion (factor 5) weighed in favor of allowing Alexander to withdraw his plea. Hearing Transcript, p. 210-215. The court reiterated this finding in its written order overruling Alexander's motion. The trial court also found that Alexander had "failed to present any reasonable or legitimate basis for withdrawing his plea[.]" March 28, 2022 Decision, p. 2. The court concluded that Alexander's prior counsel had been highly competent and that Alexander had been given a full plea colloquy hearing prior to entering this plea. *Id.*

{¶ 20} Based on a review of the record before us and the nine factors in *Miller*, we conclude that the trial court did not abuse its discretion in denying Alexander's motion to withdraw his guilty plea. Alexander was represented by highly competent counsel and did not express any dissatisfaction with counsel at the plea hearing. Alexander was given a full Crim.R. 11 hearing before entering the plea. Further, a full hearing was held on Alexander's motion to withdraw his guilty plea and the trial court gave full and fair consideration to the motion. Alexander's motion was made within a reasonable time, but his motion did not set out specific reasons for the withdrawal. At the hearing on his motion, Alexander confirmed that he was the one who came up with the plea offer of 23 years in prison. Alexander did not express any confusion to the trial court about whether he understood the nature of the charges and possible penalties. Finally, the State arguably would have been prejudiced by a withdrawal of the plea due to the improper communications Alexander had with key witnesses.

{¶ 21} We acknowledge that Alexander testified at the motion hearing about feeling pressured into entering into a plea deal because he believed that Wilder was not

working well enough for him and about Wilder's telling him that no new counsel could be appointed to replace Wilder. But Wilder's testimony contradicted this testimony. The trial court chose to credit Wilder's testimony over Alexander's. March 25, 2022 Hearing Transcript, p. 211-212. Because the trier of fact sees and hears the witnesses at trial, we must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses. *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997).

{¶ 22} The trial court was not persuaded by Alexander's contentions that he had been unhappy with his trial counsel and that he had not understood the mandatory nature of his sentence when he entered his plea. Rather, Alexander's motion appeared to be based on a change of heart rather than a reasonable and legitimate basis for withdrawing his plea. The second assignment of error is overruled.

III.    Conclusion

{¶ 23} The trial court did not abuse its discretion in denying Alexander's motion to withdraw his guilty plea. The judgment of the trial court is affirmed.

. . . . . . . . . . . . .

TUCKER, P.J. and WELBAUM, J., concur.