[Cite as *State v. Keeton*, 2023-Ohio-1230.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 29535 |
| | : | |
| v. | : | Trial Court Case No. 2022 CRB 309 |
| | : | |
| LARRY KEETON | : | (Criminal Appeal from Municipal Court) |
| | : | |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on April 14, 2023

. . . . . . . . . . .

AMY B. MUSTO, Attorney for Appellee

ANDREW S. POLLIS, Attorney for Appellant

. . . . . . . . . . . .

EPLEY, J.

{¶ 1} Defendant-Appellant Larry Keeton appeals from his conviction, challenging a condition of his community control imposed upon him by the Dayton Municipal Court. For the reasons that follow, the judgment of the trial court will be vacated as to the challenged condition. In all other respects, the judgment will be affirmed.

**I.     Facts and Procedural History**

{¶ 2} Keeton and Courtney Knight had been in a romantic relationship for approximately six years and, for most of that time, they had lived together at various residences in Dayton. In the morning hours of January 30, 2022, Knight was in bed when she was awakened by Keeton's pulling the blankets off her; he wanted to have sex. Knight repeatedly told him "no" and that she "wanted to sleep," but Keeton was undeterred. Getting fed up, Knight "told him to use a sexual toy that he had," but instead of taking his girlfriend's advice, Keeton got mad and threw the object at Knight, striking her on the left side of the face.

{¶ 3} The couple continued to argue, and eventually things escalated. Knight testified that Keeton punched her in the face on the left side of her jaw, leaving a bruise that lasted a week. Knight admitted that she fought back, striking Keeton in the back, but that only led to intensified hostility from her boyfriend. Keeton then got a phone cord and wrapped it tightly around Knight's neck. According to trial testimony, Keeton told her that "if [she] didn't stop crying he was going to do something about it." Trial Tr. at 14.

{¶ 4} After several hours, Knight was able to get out of the house and then met with police at a nearby McDonald's, where she told officers what had transpired. Officers took photographs of Knight's injuries. A few weeks later, Keeton was charged by criminal complaint with domestic violence (R.C. 2919.25(A)) and assault (R.C. 2903.13), both misdemeanors of the first degree. The case progressed to a bench trial on April 11, 2022. During that proceeding, the court heard testimony from Knight and a Dayton police officer involved with the case; Keeton also testified on his own behalf.

{¶ 5} After taking the matter under advisement at the conclusion of trial, the court

found Keeton guilty of both charges and set the matter for sentencing. At the sentencing hearing, the guilty verdicts were merged, and the State elected to proceed on the domestic violence charge. The court then sentenced Keeton to 180 days in jail (all suspended), imposed a fine and court costs, and ordered one year of supervised probation with several conditions. Of importance to this appeal, one of the conditions the court imposed was that Keeton undergo a drug and alcohol assessment and any recommended treatment.

{¶ 6} Keeton's appeal raises one assignment of error.

## II.    Conditions of Probation

{¶ 7} In his assignment of error, Keeton argues that the trial court abused its discretion when it ordered him to undergo a drug and alcohol assessment and comply with any recommended treatment. He reasons that this condition of community control was unlawful because there was nothing in the record to link drug or alcohol use or abuse with his crime of domestic violence. Keeton is correct.

{¶ 8} A trial court has wide discretion to impose conditions of community control, but its discretion is not unlimited. *State v. Keggan*, 2d Dist. Greene No. 2006-CA-9, 2006-Ohio-6663, ¶ 66. The Ohio Supreme Court has concluded that community control conditions must be related to the interest of justice, the rehabilitation of the offender, and ensuring the offender continues with good behavior. *State v. Jones*, 49 Ohio St.3d 51, 52, 550 N.E.2d 469 (1990). To help determine whether a condition of community control satisfies the requirements, the Court set out three elements which must be satisfied: (1) the condition is reasonably related to rehabilitating the offender; (2) it must have some

relationship to the crime of which the offender was convicted; and (3) the condition relates to conduct which is criminal or reasonably related to criminality and serves the statutory ends of probation. *Id.* at 53.

{¶ 9} The imposition of conditions of community control is reviewed under the abuse of discretion standard. *State v. Talty*, 103 Ohio St.3d 177, 2004-Ohio-4888, 814 N.E.2d 1201, ¶ 10. To constitute an abuse of discretion, a trial court's action must be arbitrary, unreasonable, or unconscionable. *Ojalvo v. Bd. of Trustees of Ohio State Univ.*, 12 Ohio St.3d 230, 232, 466 N.E.2d 875 (1984). "It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary." *State v. Malloy*, 2d Dist. Clark No. 2011-CA-21, 2012-Ohio-2664, ¶ 24.

{¶ 10} Courts across the state, including this one, have considered this issue and have consistently concluded that to impose drug or alcohol screenings or treatment as conditions of probation, there must be a link between substance abuse and the crime committed. *See Keggan*; *State v. Voelker*, 1st Dist. Hamilton No. C-060022, 2006-Ohio-6978; *State v. Chavers*, 9th Dist. Wayne No. 04-CA-0022, 2005-Ohio-714.

{¶ 11} In *Keggan*, 2d Dist. Greene No. 2006-CA-9, 2006-Ohio-6663, the defendant pled no contest to aggravated menacing after he allegedly threatened his neighbor with a shotgun. One of the conditions of probation imposed upon him was that he would not "consume or possess any alcohol or drug of abuse or be in a bar or place that serves alcoholic beverages." On appeal, Keggan argued that the prohibition of alcohol was an abuse of discretion because there was no evidence that his crime was caused by alcohol

use. This Court agreed and reversed the trial court's judgment, finding "there is no evidence in the record that he had a problem with alcohol that required treatment or that alcohol played any role in the aggravated menacing offense. In addition, the record contains no evidence that a restriction on alcohol is related to possible future criminal acts by Keggan." *Id.* at ¶ 67.

{¶ 12} Similarly, in *Voelker*, the defendant was charged with domestic violence for head-butting his wife in the face. He later pled to a lesser charge, but as a condition of probation, he was required to complete alcohol treatment and submit to random urine screenings. Voelker challenged the treatment and screening requirements as not being related to the crime of which he was convicted. The First District Court of Appeals agreed with Voelker and noted:

> Though many domestic-violence events are unquestionably linked to substance abuse, there is not an *automatic* relationship between alcohol-treatment and urine-screen probation conditions and the offense of domestic violence. Nor has it been alleged that alcohol or substance abuse accompanied the offense to which [Voelker] pleaded guilty. Because the record does not show a reasonable relationship between the probation conditions and the domestic-violence incident, the trial court abused its discretion when it imposed the alcohol-treatment and random-urine-screening conditions.

*Voelker* at ¶ 7.

{¶ 13} In this case, the court's order for drug and alcohol assessments could

plausibly be tied to the first and third *Jones* factors. For instance, getting drug and alcohol assessments and treatment could reasonably be related to rehabilitating Keeton. Becoming drug and alcohol free is often a first step to consistent engagement in lawful behavior. This condition of community control could also logically relate to the statutory ends of community control and generally relate to many instances of criminality. However, in this scenario, there was nothing in the record that tied the crimes Keeton committed to substance abuse. There was no testimony that he was drunk or high when he attacked Knight. Instead, the motivation of the crime seemed to be purely sexual; Keeton wanted to have intercourse, and when Knight declined, he became enraged, punching and then strangling her. The conditions failed on the second factor. The trial court therefore abused its discretion.

{¶ 14} Nevertheless, the State argues that even if it were an error for the trial court to order the substance abuse assessment and treatment, it was an error invited by Keeton himself. We disagree. The doctrine of invited error is a corollary of the principle of equitable estoppel. Under the invited error doctrine, an appellant cannot attack a judgment for errors committed by himself or herself, for errors that the appellant induced the court to commit, or for errors into which the appellant either intentionally or unintentionally misled the court, and for which the appellant is responsible. *State v. Minkner*, 194 Ohio App.3d 694, 2011-Ohio-3106, 957 N.E.2d 829, ¶ 24 (2d Dist.).

{¶ 15} The State's argument here revolves around its belief that Keeton's attorney asked for drug and alcohol treatment at the sentencing hearing, citing the following remarks:

Mr. Keeton has been involved with our social work department. We have been trying to get him into some treatment facilities. Unfortunately, there is just some kind of big backlog, so he is still waiting to get into some of those, but our social worker has been working with him to draft up a memo.

Sentencing Tr. at 4. To buttress its position that Keeton invited the trial court's error, the State cites two cases: *State v. Smith*, 12th Dist. Butler No. CA2001-01-009, 2002 WL 553705 (April 15, 2002) and *State v. Coulter*, 1st Dist. Hamilton No. C-170669, 2019-Ohio-1375.

{¶ 16} In *Smith*, the defendant was ordered, as a condition of his probation, to stay out of the city of Hamilton. Upon review, the appellate court found that condition failed the *Jones* test as to all three elements, but it noted that Smith himself invited that error when he informed the court at the disposition, "I can go to Kentucky, your Honor, and stay with my brother, if you want to bar me from town. I just want to do what's right." *Smith* at *5.

{¶ 17} In *Coulter*, the defendant (a juvenile at the time) shot and killed a man as he walked home one night. Coulter was charged with aggravated murder, aggravated robbery, and tampering with evidence. Eventually, he pled guilty to involuntary manslaughter, among other things, and negotiated a 20-year prison sentence. At sentencing, defense counsel concluded his remarks by stating: "I would ask the Court to impose the suggested sentence of 20 years." On appeal, Coulter challenged the validity of his sentence, but the First District rejected the argument, noting that this "seems to us to be a quintessential case of invited error – a party cannot request a certain result (here, a 20-year sentence) and then complain on appeal that the judge did his bidding." *Coulter*

at ¶ 5.

**{¶ 18}** While *Smith* and *Coulter* are clear examples of invited error, we find both cases to be distinguishable from Keeton's. In both of those cases, the defendant (or his attorney) affirmatively acted to induce the trial court to do something. Smith offered to move to Kentucky and Coulter's attorney negotiated and then (on the record) asked for a 20-year prison term before turning around and arguing that it was error. In this case though, Keeton's attorney merely *mentioned* that he had been trying to get into "some treatment facilities." Sentencing Tr. at 4. The State takes this statement a step further and posits that it was a drug and alcohol treatment facility for which Keeton was advocating, but just a sentence later, Keeton's counsel told the court that he wanted "help with his anger issues." *Id.* The State's argument that Keeton asked for substance abuse treatment is belied by the record, and the claim of invited error fails.

**{¶ 19}** The condition of community control that Keeton submit to drug and alcohol assessments and then comply with recommendations thereafter was not related to the crime of which he was convicted. Further, he did not invite the trial court's error. Keeton's assignment of error is sustained.

### III. Conclusion

**{¶ 20}** The condition of community control which required Keeton to complete a drug and alcohol assessment and follow through with any treatment as recommended will be vacated. In all other respects, the judgment of the trial court will be affirmed.

. . . . . . . . . . . . .

TUCKER, J. and LEWIS, J., concur.