[Cite as *State v. Slaughter*, 2026-Ohio-377.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | C.A. No. 30589 |
| Appellee | : | |
| | : | Trial Court Case No. 2024 CR 02142 |
| v. | : | |
| | : | (Criminal Appeal from Common Pleas |
| ANDREW L. SLAUGHTER III | : | Court) |
| | : | |
| Appellant | : | **FINAL JUDGMENT ENTRY &** |
| | : | **OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on February 6, 2026, the judgment of the trial court is affirmed in part, reversed in part, and remanded for further proceedings in accordance with the opinion.

Costs to be paid as follows: 50% by appellee and 50% by appellant.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

MICHAEL L. TUCKER, JUDGE

LEWIS, P.J., and HUFFMAN, J., concur.

MONTGOMERY C.A. No. 30589

CHIMA R. EKEH, Attorney for Appellant
SARAH H. CHANEY, Attorney for Appellee

TUCKER, J.

{¶ 1} Andrew L. Slaughter III appeals from his conviction following a guilty plea to aggravated drug possession, a third-degree felony.

{¶ 2} Slaughter contends that the trial court erred in accepting his plea because it was not knowingly, intelligently, and voluntarily entered. He also challenges the trial court's overruling of a pre-sentence motion to withdraw the plea. Finally, he claims his sentence was unauthorized by law insofar as the trial court disapproved shock incarceration or placement in an intensive program prison.

{¶ 3} We conclude that Slaughter's plea was valid under Crim.R. 11 and that the trial court did not abuse its discretion by overruling his motion to vacate it. We agree, however, that his sentence was not authorized by law insofar as the trial court failed to give factual reasons for disapproving shock incarceration or placement in an intensive program prison. That omission rendered the trial court's disapproval contrary to law under R.C. 2953.08(G)(2)(b). Accordingly, the trial court's judgment is affirmed in part and reversed in part, and the case is remanded for further proceedings.

## I. Background

{¶ 4} A grand jury indicted Slaughter on a charge of aggravated drug possession as a second-degree felony. He later agreed to plead guilty to the offense as a third-degree felony. The parties also agreed to a prison sentence of one to two years. During a February 21, 2025 plea hearing, defense counsel represented that the trial court had agreed to impose

a one-year sentence if Slaughter cooperated with pretrial services and did not commit any new offenses. Following a Crim.R. 11 colloquy, the trial accepted the plea and made a finding of guilt. Due to the agreed sentence, it declined to order a presentence investigation and set the matter for sentencing on March 3, 2025.

{¶ 5} One week later, Slaughter sought to withdraw his plea. His written motion asserted that he had been "thinking about this case" and that he had "made a mistake by entering a plea." He stated that he "felt he was forced to make a decision before he was sure" about pleading guilty. The trial court held an August 4, 2025 hearing on the motion, but Slaughter declined to testify or present any evidence. Defense counsel simply argued that withdrawal was necessary to prevent a manifest injustice for two reasons: (1) Slaughter felt pressured to plead guilty in order to have a capias for his arrest withdrawn; and (2) he did not know that the plea included a prison sentence of one to two years. The trial court found these arguments unpersuasive and overruled the motion.

{¶ 6} Slaughter subsequently appeared for sentencing on August 11, 2025. He received a one-year prison term. The trial court noted that he was eligible for shock incarceration or an intensive program prison but disapproved such placement "based on the purposes and principles of sentencing, the seriousness and recidivism factors, and the [plea] agreement." Slaughter timely appealed, advancing three assignments of error.

## II. Analysis

{¶ 7} The first assignment of error states:

**APPELLANT'S PLEA WAS NOT ENTERED KNOWINGLY, INTELLIGENTLY, AND/OR VOLUNTARILY.**

{¶ 8} Slaughter acknowledges that the trial court conducted a plea hearing in compliance with Crim.R. 11. He nevertheless argues that his guilty plea was invalid for three

3

reasons: (1) he felt compelled to enter the plea in order to have a capias withdrawn; (2) the plea form stated that he was eligible for community control whereas the trial court orally advised him that he was ineligible; and (3) his attorney failed to tell him that a jointly recommended sentence generally was not reviewable on appeal or that he would not receive judicial release.

{¶ 9} Upon review, we find the foregoing arguments to be unpersuasive. On February 7, 2025, the trial court issued a capias for Slaughter's arrest based on his failure to comply with a bond condition. Without being arrested, Slaughter then appeared for the plea hearing on February 21, 2025. The only discussion of the capias came from defense counsel. At the outset of the hearing, defense counsel addressed the trial court and stated: "Your Honor had indicated that [if] Mr. Slaughter did enter a plea that you would give a 12-month sentence minus credit for time served. Also, Mr. Slaughter has an outstanding capias from pretrial services. And you had indicated Mr. Slaughter can't then enter a plea if he immediately went to pre-trial services, but that the warrant would be lifted."

{¶ 10} We are unsure what defense counsel meant about Slaughter being unable to enter a plea if he went to pretrial services. In any event, the trial court appears to have agreed to withdraw the capias, and it did so after the hearing. It is unclear from defense counsel's comment, however, that the trial court conditioned withdrawal of the capias on a guilty plea. But even if it did, Slaughter has not established that the capias issue negated the knowing, intelligent, and voluntary nature of his plea.

{¶ 11} As for community control, the plea form correctly indicated that Slaughter was eligible. Contrary to his argument, the trial court did not advise him otherwise during the plea hearing. Due to the agreed sentence, it stated only that it would not consider imposing community control. Finally, the record does not reveal what, if anything, defense counsel

4

told Slaughter about the reviewability of an agreed sentence or the possibility of judicial release. Because any discussion between Slaughter and his attorney occurred outside of the record, he cannot use it on direct appeal to establish ineffective assistance affecting the validity of his plea. *State v. Cole*, 2025-Ohio-675, ¶ 7 (2d Dist.). Accordingly, the first assignment of error is overruled.

{¶ 12} The second assignment of error states:

**THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO WITHDRAW HIS GUILTY PLEA.**

{¶ 13} Slaughter contends the trial court abused its discretion by not permitting him to withdraw his guilty plea. He analyzes the issue under the standards applicable to pre-sentence motions. Applying a multi-factor balancing test, he asserts that he had a reasonable and legitimate basis for withdrawal of the plea.

{¶ 14} Upon review, we find Slaughter's argument to be without merit. Although he filed his motion before sentencing, he knew the trial court intended to impose a one-year prison sentence within the agreed range of one to two years. When a defendant discovers the sentence a trial court intends to impose, we typically treat a pre-sentence motion as a post-sentence motion. Doing so makes it more difficult for a defendant to test the "sentencing waters" and then seek to vacate a plea if he is dissatisfied with the outcome. *State v. Wroten*, 2023-Ohio-966, ¶ 18 (2d Dist.), citing *State v. Alexander*, 2023-Ohio-21, ¶ 16-17 (2d Dist.). But that approach does not apply to agreed sentences. When an agreed sentence exists and the trial court adopts the agreement, there can be no unpleasant surprise to the defendant. In that situation, the more lenient pre-sentence standard still applies. *Id*.

{¶ 15} The issue is more complicated here, however, because defense counsel explicitly urged the trial court to apply the post-sentence standard to Slaughter's motion.

During the plea-withdrawal hearing, defense counsel argued "that in order to withdraw his plea, there has to be some kind of injustice or manifest injustice due to the docket showing that there was a statement of a sentence on the record." The manifest-injustice standard recited by defense counsel only applies to post-sentence motions to withdraw a plea. *State v. Sheppard*, 2025-Ohio-4882, ¶ 18 (2d Dist.). At defense counsel's urging, the trial court incorrectly applied that stricter standard to his pre-sentence motion.

{¶ 16} Although the trial court applied the wrong standard, it did so at defense counsel's invitation. "Under the invited error doctrine, an appellant cannot attack a judgment for errors committed by himself or herself, for errors that the appellant induced the court to commit, or for errors into which the appellant either intentionally or unintentionally misled the court, and for which the appellant is responsible." *State v. Keeton*, 2023-Ohio-1230, ¶ 14 (2d Dist.). The doctrine precludes a party from complaining about an action or ruling made in accordance with the party's own suggestion. (Citations omitted.) *State v. Cunigan*, 2011-Ohio-4010, ¶ 12 (2d Dist.).

{¶ 17} Under the manifest-injustice standard suggested by defense counsel, the trial court did not abuse its discretion in overruling Slaughter's motion. "'A manifest injustice is a clear or openly unjust act; an extraordinary and fundamental flaw in the plea proceeding.'" *State v. Hawke*, 2020-Ohio-511, ¶ 13 (2d Dist.), quoting *State v. Yapp*, 2015-Ohio-1654, ¶ 8 (8th Dist.). "The manifest-injustice standard demands a showing of extraordinary circumstances, and the defendant bears the burden of proving the existence of a manifest injustice." *State v. Turner*, 2007-Ohio-1346, ¶ 20 (2d Dist.).

{¶ 18} Slaughter did not testify at the plea-withdrawal hearing, and he presented no evidence. Instead, defense counsel simply argued that withdrawal should be allowed because Slaughter felt "coerced or forced" to plead guilty and "did not fully understand that

6

the plea included a sentence." Counsel's argument on these points was not evidence. Considering Slaughter's refusal to testify, the record contains no actual evidence that he felt pressured to plead guilty or that he did not understand the plea included an agreed sentence. Moreover, both propositions are controverted by the plea-hearing transcript. Slaughter acknowledged that he was entering the plea voluntarily without compulsion. The record also contains a clear explanation of the trial court's intention to impose a one-year sentence, consistent with the parties' agreement to one to two years in prison. The trial court appears to have agreed to withdraw the capias as a benefit or concession to him, but its willingness to do so did not compel him to enter the plea. We see no extraordinary circumstances evidencing a clear or openly unjust act or an extraordinary, fundamental flaw in the plea proceeding.

{¶ 19} Even under the more lenient standard governing pre-sentence motions to withdraw a plea, we would find no abuse of discretion in the trial court's ruling. When evaluating a pre-sentence motion, courts often consider the following factors: (1) whether the accused was represented by highly competent counsel, (2) whether the accused was given a full Crim.R. 11 hearing before entering the plea, (3) whether a full hearing was held on the motion, (4) whether the trial court gave full and fair consideration to the motion, (5) whether the motion was made within a reasonable time, (6) whether the motion identified specific reasons for withdrawal, (7) whether the accused understood the nature of the charges and possible penalties, (8) whether the accused was perhaps not guilty or had a complete defense, and (9) whether withdrawal would prejudice the State. *State v. Good*, 2023-Ohio-1510, ¶ 8 (2d Dist.). No single factor is dispositive. *State v. Massey*, 2015-Ohio-4711, ¶ 30 (2d Dist.), citing *State v. Preston*, 2013-Ohio-4404, ¶ 20 (2d Dist.). The ultimate

issue is whether there is "a reasonable and legitimate basis for the withdrawal of the plea." *State v. Xie*, 62 Ohio St.3d 521, 527 (1992).

{¶ 20} Here the record reveals no issue about defense counsel's competence, and Slaughter does not dispute receiving a full Crim.R. 11 hearing and a full hearing on his plea-withdrawal motion. The trial court gave full and fair consideration to the motion and explained its ruling. The motion was made within a reasonable time and gave reasons for seeking withdrawal. But those reasons were unsupported by testimony or other evidence. In fact, they were belied by the record. Slaughter claimed he felt compelled to plead and did not understand that the plea included a sentence. The plea transcript does not reflect any compulsion, and the agreed sentence was a central part of the plea hearing. Slaughter also indicated that he understood the nature of the charges and possible penalties, and we see no indication that he perhaps was not guilty or had a complete defense. Although allowing him to withdraw his plea likely would not have prejudiced the State, we see no reasonable and legitimate basis for withdrawal even under the more lenient pre-sentence standard. The second assignment of error is overruled.

{¶ 21} The third assignment of error states:

**APPELLANT'S SENTENCE IS CONTRARY TO LAW.**

{¶ 22} Although Slaughter received an agreed sentence, he contends it remains subject to review because it was not authorized by law. Specifically, he claims the trial court violated R.C. 2929.19(D) by failing to make a finding that gave reasons for its disapproval of shock incarceration or his placement in an intensive program prison.

{¶ 23} In response, the State contends Slaughter's sentence is unreviewable because it was jointly recommended and his one-year prison term was within the authorized

statutory range. Alternatively, the State insists that the trial court made statutorily required findings for disapproving shock incarceration or placement in an intensive program prison.

{¶ 24} Slaughter's argument implicates R.C. 2929.19(D), which authorizes a sentencing court to recommend a defendant's placement in a shock incarceration program or in an intensive program prison, disapprove placement in those programs, or make no recommendation. The statute provides that "[i]f the court recommends or disapproves placement, it shall make a finding that gives its reasons for its recommendation or disapproval."

{¶ 25} During Slaughter's sentencing hearing, the trial court imposed a one-year prison term consistent with the agreed sentence. It then addressed him and stated: "You are eligible for shock incarceration or an intensive program prison; however, based on the purposes and principles of sentencing, the seriousness and recidivism factors, and the agreement here, the Court disapproves such placement." In its written judgment entry, the trial court disapproved shock incarceration or placement in an intensive program prison for reasons "stated on the record."

{¶ 26} In *State v. Allender*, 2012-Ohio-2963 (2d Dist.), we determined that a trial court's disapproval of shock incarceration or placement in an intensive program prison "based on the purposes and principles of sentencing, and the seriousness and recidivism factors in the Revised Code" did not constitute an adequate finding setting forth reasons for disapproval. *Id*. at ¶ 13. Although the trial court in *Allender* "referred to various general principles that it considered, and to various sources of information that it reviewed," we held that "the trial court did not refer to any specific facts in deciding to disapprove Allender for shock incarceration or the intensive program prison." *Id*. at ¶ 23.

{¶ 27} We reach the same conclusion here. Much like *Allender*, the trial court

9

supported its disapproval of shock incarceration or placement in an intensive program prison by referring to the statutory purposes and principles of sentencing as well as the seriousness and recidivism factors. But *Allender* establishes that a generic reference to these guidelines does not constitute a specific enough reason for disapproval to satisfy R.C. 2929.19(D).

{¶ 28} At sentencing, the trial court's only other stated reason for disapproval was "the agreement." Once again, however, a general reference to the plea agreement was insufficient, particularly where nothing in the agreement precluded Slaughter from being granted shock incarceration or being placed in an intensive program prison. The agreement provided for a sentence of one to two years in prison, but it said nothing about his eligibility for shock incarceration once in prison or his placement in an intensive program prison. The agreement did not stipulate that Slaughter would be disapproved for either program or that he would be required to serve the full agreed term. Where a plea agreement does not mention shock incarceration or placement in an intensive program prison, a general reference to the agreement logically cannot constitute a factual reason for disapproval. Consequently, the trial court violated R.C. 2929.19(D) at sentencing by failing to make a finding that gave reasons for its disapproval of shock incarceration or Slaughter's placement in an intensive program prison.

{¶ 29} In its written judgment entry, the trial court also indicated that it had considered "the criminal history of the defendant, the pre-sentence investigation, the facts and circumstances of the offense, and any victim impact statement" prior to disapproving shock incarceration or an intensive program prison. But merely identifying various sources that it had considered also did not constitute a finding with reasons for disapproval. *State v. Matthews*, 2015-Ohio-2288, ¶ 13-14 (2d Dist.).

{¶ 30} The only remaining question is whether the trial court's error is unreviewable

because Slaughter's sentence was jointly recommended and his one-year prison term was within the authorized statutory range. A sentence is not subject to review "if the sentence is authorized by law, has been recommended jointly by the defendant and the prosecution in the case, and is imposed by a sentencing judge." R.C. 2953.08(D)(1).

{¶ 31} Insofar as the trial court disapproved shock incarceration or placement in an intensive program prison without a finding and supporting reasons, that aspect of Slaughter's sentence was not authorized by R.C. 2929.19(D). An agreed sentence is authorized by law, and therefore not appealable, if it satisfies "all mandatory sentencing provisions." *State v. Mitchell*, 2025-Ohio-1764, ¶ 12 (2d Dist.), citing *State v. Underwood*, 2010-Ohio-1, ¶ 20. The statutory requirement for a finding with reasons is a mandatory sentencing provision when a trial court disapproves shock incarceration or placement in an intensive program prison and the plea agreement does not address those issues. Therefore, Slaughter's agreed sentence, which did not address shock incarceration or intensive program prison, does not preclude him from challenging that aspect of the sentence on appeal.

{¶ 32} In opposition to our conclusion, the State asserts that a joint recommendation for consecutive sentences relieves a trial court of its obligation to make consecutive sentence findings. The State reasons that Slaughter's agreement to a prison term of one to two years likewise eliminated the trial court's obligation to make findings supporting disapproval of shock incarceration or placement in an intensive program prison. We disagree. The State's analogy would be persuasive if Slaughter's agreed sentence had included disapproval of shock incarceration or placement in an intensive program prison. But his agreed sentence did not address those issues. Shock incarceration and placement in an intensive program prison also are not inherently inconsistent with the imposition of an agreed prison sentence of one to two years.

11

**{¶ 33}** Every defendant who benefits from shock incarceration or obtains placement in an intensive program prison first must receive a prison sentence of some duration. Therefore, Slaughter's agreement to a prison term of one to two years did not, on its face, negate the availability of shock incarceration or intensive program prison. That being so, the trial court had a statutory obligation to give reasons for disapproving shock incarceration or placement in an intensive program prison. Given its failure to do so, the trial court violated R.C. 2929.19(D). To that extent, its judgment is contrary to law, and Slaughter's sentence is subject to being vacated with the case remanded for resentencing under R.C. 2953.08(G)(2)(b). *State v. Michalewicz*, 2015-Ohio-5142, ¶ 9 (8th Dist.) (recognizing that "if a court disapproves of placement in an [intensive program prison] and fails to state a reason that comports with the R.C. 2929 .19(D) mandate, then the court's disapproval is contrary to law"); *State v. Swayne*, 2013-Ohio-3747, ¶ 3 (4th Dist.) (finding appellant's sentence "clearly and convincingly contrary to law" where the trial court failed to make a finding with reasons for disapproving placement in an intensive program prison). The third assignment of error is sustained.

## III. Conclusion

**{¶ 34}** The trial court's judgment is reversed insofar as it disapproved shock incarceration and intensive program prison without giving reasons. Slaughter's sentence is vacated, and the case is remanded for resentencing. In all other respects, the trial court's judgment is affirmed.

. . . . . . . . . . . . .

LEWIS, P.J., and HUFFMAN, J., concur.

12